## SOUTHERN PAC. CO. v. COVEY.

(Circuit Court of Appeals, Fifth Circuit. May 14, 1901.)

### No. 1,020.

APPEAL—REVIEW—QUESTION OF FACT.

> Where the right of a plaintiff to recover depends upon a question of fact on which the evidence is conflicting, the case is one for the jury, and their verdict, which the circuit court has refused to set aside, cannot be reviewed by the circuit court of appeals upon any question as to the weight or sufficiency of the evidence.

In Error to the Circuit Court of the United States for the Western District of Texas.

This action was brought by P. M. Covey, a citizen of Texas, against the Southern Pacific Company, a corporation chartered under the laws of Kentucky. The plaintiff was injured while in the employ of the defendant as a brakeman. The accident occurred in the yard of the defendant at Lordsburg, N. M. The plaintiff, while in the performance of his duty, was riding on a ladder on the side of a freight car, and was knocked off by a car standing on an adjoining track. His collar bone was broken, and he was injured and bruised about the shoulders and head. He was also injured so as to cause him to lose the sight of one of his eyes. He bases his right to recover on the following statement in his petition: "That defendant has and maintains in its yard at Lordsburg, in the territory of New Mexico, two tracks, being numbered 3 and 4, which join at a switch near which plaintiff was injured; that at the time plaintiff was injured he was riding upon a box car, which was being propelled along said track No. 3, and that certain box cars were

standing on said track No. 4 at the place and in the position in which, had said tracks Nos. 3 and 4 been properly and carefully constructed, would have resulted in no harm to the plaintiff; that said tracks Nos. 3 and 4 were so constructed that the inside rails thereof, or the rail of No. 3 nearest to track No. 4, and the rail of No. 4 to track No. 3, were lower than the outside rails, or the rail of No. 4 furthest from track No. 3, and the rail of No. 3 furthest from track No. 4; that by reason of the wrongful construction of said tracks in the respect above mentioned, and by reason of said inside rail being lower than the outside rail, which fact was unknown to plaintiff at the time of his injuries, the cars of defendant, standing on said track No. 4, and the car of defendant upon which plaintiff was riding on track No. 3, leaned towards each other, so that there was ample room between said cars at the lower part of the same, but their tops came so close together as to be dangerous, and did in fact cause plaintiff's injuries; that had said tracks been properly and skillfully constructed, and said inside rails been of equal height with the outside, said cars would not have converged at the top, and there would have been ample room for the plaintiff to have cleared the same, or pass by the cars on track No. 4 without injury, even at the place where said cars were standing on said track No. 4, and where plaintiff was struck by the same." The location of the accident will be better understood by examining a diagram, which was offered in evidence:

The material defense was that the stationary car which struck the plaintiff was negligently placed too near the junction of track No. 3 with track No. 4 to enable the car on which the plaintiff was riding to pass in safety, and that the stationary car was so placed there by the plaintiff or by a fellow servant of the plaintiff. The contention of the defendant was that the car was left standing on track No. 4 within the curve, and within less than 30 feet of the junction of tracks Nos. 3 and 4, and that, therefore, it was negligently left so near to track No. 3 that the cars on the latter track could not pass it in safety. The contention of the plaintiff was that the stationary car was two and a half or three car lengths from the junction of the tracks, and that it did not stand on the curve, but at a point where the track was straight, and that the accident was caused by the tracks being so constructed that cars on them would lean inward; the cars on track No. 3 leaning towards track No. 4, and those on track No. 4 leaning towards track No. 3. It was contended that this construction of the tracks placed the cars too close together at the top, and so caused the accident. A brief statement of the evidence relating to these respective contentions is necessary:

109 F.—27

P. M. Covey testified that the places where he measured tracks Nos. 3 and 4 were on the straight track, on the tangent; that it was "between two and a half and three car lengths" from where the tracks leave each other. He also testified: "I found the inside rail of No. 4, the rail nearest 3, two and one-half inches lower than the outside rail. I found the inside rail of 3 nearest to rail 4 a fraction over one inch and a half lower than the outside rail, the furthest rail from 4. I measured in several different places about half a car length along the track and found that condition. The measurement was made on the tangent or straight track. As to track 3, there was no curve there. It was a straight track where I found the inside rail a fraction over an inch and a half lower than the outside rail. Where the rails are not of the same height as to the perpendicular position of the cars, it will have a tendency to throw the tops of the cars together. The cars are not rigid, and set loosely on the trucks, with what is called a 'king pin,' from the center of the cars down to the parts of the trucks, and have a bearing of 3 or 4 inches space, and after the car has lost its perpendicular, one rail being 2½ inches lower than the other, I should think the top of the car would naturally pull it further, so that it would lean further than the 2½ inches, owing to the construction of the car. The distance between the tracks that I measured was about 5 feet and 11 inches. I know that it was not as much as 8 feet and 3 inches. Just 5 feet 11 inches. The distance that would give between the cars, allowing for the projection of the cars of about 2 feet each, would leave a space between the cars of about 2 feet. The injury was from my shoulders up. My hips were not hurt at all. There were no bruised spots from my shoulders down. I was standing on the hand holt, just above the stirrups. The stirrup goes a little under the car, and I was not standing up as high as the roof of the car. My head was not as high as the roof, or even with it. On the size of the car that was, it was lacking about 18 inches. The roof or eaves of the car could not strike my head in the position I was standing. * * * I know positively how I was standing on the ladder. My head was not as high as the roof of the car. I was standing on the first hand holt up of the ladder, and hand holt about even with my head, and the lamp was on my arm. A tall man can stand up in the car. It is about 7 or 8 feet, I should judge. It is higher than I would be standing on the bottom hand holt. My head would lack about 18 inches, standing on the bottom hand holt, of coming to the eaves of the car. The bottom hand holt is about even with the floor of the car, and standing in the door the head does not come to the top of the door. * * * It was the extreme west car on No. 4—on the west end of No. 4—that I was hurt by. From where this coupling was made to where this car was supposed to strike me, where I lost consciousness, I should judge the distance— I did not count the cars, but, measuring the entire length of the track, I should judge it was thirty or forty car lengths. In coupling this car back on the other cars, they did not run any cars down on No. 4 west. It is up hill that way. In leaving cars sitting on either track, you will have to leave the brakes set on the west end to hold them. * * * The cars that got cornered the night before happened right about where I got hurt on 3 and 4. These cars hit at the top. They were coal cars, and not loaded. I did not know of the condition of the track, and did not know what caused them to hit at the top." Joseph A. McDonald, who was with Covey when the accident occurred, testified: "Said plaintiff (P. M. Covey) received his injuries at a point between two and a half and three car lengths from where tracks 3 and 4 came together." James Hartigan testified: "In order to allow cars to safely pass, they should be placed at least 30 feet from the heel of the frog. The heel is the wider part, where the rails are connected." George W. Moore testified to being on a car on track No. 3 after the accident, and passing one on No. 4 "back about 2½ or 3 car lengths" from the junction of the two tracks. He said "it must have been on the straight track. * * * I raised my legs to get them out of the way, to take no chances on it. The roof of the car—the eaves—came over the ties. The roof of an ordinary box car comes about four inches over. I never measured. I don't know exactly. At the bottom of the car there was plenty of room for a man to pass through. I don't

know whether there was room for a man to pass through at the top of the car below the roof. I hardly think so." Eugene Clapp testified: "This car (the one on No. 4 track that struck Covey) was inside of the curve,—must have been a shorter distance than 30 feet. I should judge it was 22 to 24 feet,—something like that. * * * We figure a car length at 30 feet. They run 36 and 40. Two and a half car lengths would be about 75 feet." F. M. Ferris, who had charge of the tracks at Lordsburg, subpœnaed for the defendant, but first examined by the plaintiff, said it was "30 feet from the frog to the tangent,"—meaning the curve was 30 feet long,—and that "when track No. 4 was made it was given an elevation of 2½ inches, which is the standard for a seven-degree curve." During the progress of the trial Ferris examined the track again, and amended his evidence. His evidence, after the examination and the making of measurements, tended to show that the curve extended more than 96 feet. He said that he testified the other day that he "thought it would clear a car at 30 feet." On second examination, he said that he found the "elevation of that curve, by measurement, 1 inch." "I measured all around to the tangent, and found it 1 inch, instead of 2½ inches, as I testified before." The defendant offered other evidence tending to show that the tracks were properly constructed, and that the car which plaintiff struck stood on the curve, and not on the straight part of the track.

The court instructed the jury that they must determine from the testimony the point or place of the accident; and if they believe from the testimony that the accident occurred on the curve of the track, and that there was danger in the cars meeting and passing each other at that point, and that the car on track No. 4 was carelessly left at the point of the accident by the employés of the defendant, "then you are instructed that the plaintiff cannot recover, because the accident in such case resulted from the carelessness and negligence of a fellow servant of the plaintiff, for which the law allows no recovery. The jury was instructed as to the right of the plaintiff to recover if the stationary car was not on the curve, and if they were satisfied from the testimony that the track at the place of the accident was defectively constructed, as claimed by the plaintiff in his petition, and that the defendant knew of the defects in the track, or could have discovered them by exercise of reasonable diligence. The defendant requested the court to give the jury three special charges. Each of these charges, in effect, instructed the jury to find a verdict for the defendant on the ground that the "undisputed evidence" showed that, through the negligence of the plaintiff or some of the crew working with him, the stationary car which struck the plaintiff was placed on track No. 4, within the curve, and was near enough to the junction of the tracks to cause the accident. The court declined to give each of these charges, and the defendant excepted. The jury found for the plaintiff, and assessed his damages at $10,000. A judgment was entered on the verdict. The defendant having moved for a new trial, and its motion being overruled, the case is brought here on writ of error.

T. J. Beall and Wyndham Kemp, for plaintiff in error.

T. A. Falvey and Waters Davis, for defendant in error.

Before PARDEE, McCORMICK, and SHELBY, Circuit Judges.

SHELBY, Circuit Judge, after stating the case as above, delivered the opinion of the court.

The controlling question in this case on the trial below was, where did the accident occur? Was the car that struck the plaintiff standing on the straight track, or had it been negligently left on the curve near the junction of the two tracks? If it were standing on the curve near the junction of the tracks, the accident could have occurred without the fault of the defendant company; for the cars, in that event, would collide, although the tracks were properly constructed. If, however, it occurred with the car standing

where the tracks were straight, the moving car would have passed the standing car without collision if the tracks were properly constructed. The learned counsel on both sides recognize this as the dominant question. Counsel for the plaintiff in error state the question: "In this case it appears that the precise issue presented by the court in its charge was as to whether plaintiff was injured on the straight track or on the curvature, and this record discloses that the jury found in his favor on that issue, without any evidence to support it." Counsel for the defendant in error state the same question in different words: "Does the uncontradicted evidence show that plaintiff, P. M. Covey, was injured on the curve of the track at a place where the cars came so close together, by reason of their proximity to the junction of the two tracks, that there was not room to pass, and that that caused his injury, and not any defect in the track?" The charge of the court, the evidence, and these excerpts from the arguments filed here, show clearly the question of fact that the court submitted to the jury. The question of fact is not to be decided by this court. If the jury erred in the verdict, and if the court erred in refusing to grant the motion for a new trial, there could be no remedy for either error in this court. The jury are the triors of the facts, and the question on the motion for a new trial is in the discretion of the trial court. The sole question here is, did the court err in submitting the question to the jury, was there sufficient evidence tending to sustain the theory of the plaintiff, Covey, as to the accident, to make it a proper question for submission to the jury? The contention of the company in this court is that the evidence is uncontradicted that the car stood on the curve, and not on the straight track, when the collision occurred. It is true that there was evidence tending to show that it stood on the curve. But was there none to the contrary? It was proved that a car is from 30 to 40 feet long. Joseph A. McDonald, the company's yard master, who saw the accident, said that it occurred between two and a half and three car lengths from where tracks Nos. 3 and 4 join. That would be not less than 75 feet from the junction of the tracks. Ferris, on his first examination, said that it was "30 feet from the frog to the tangent"; and Eugene Clapp said that a car, to be inside of the curve, must have been a shorter distance than 30 feet from the frog. Moore testified that at a distance of from two and a half to three car lengths from the junction of the tracks a car passing on track No. 3 would pass so closely to one standing on track No. 4 that he hardly thought there was room for a man to pass through at the top of the car. From this evidence the jury, if they believed it, might fairly conclude that the curve did not extend more than 30 feet from the junction of the two tracks, and that the accident occurred not less than 75 feet from the junction, and therefore on the tangent.

Covey testified that at a point from two and a half to three car lengths from the junction of the two tracks Nos. 3 and 4 they were 5 feet 11 inches apart; that the inside rail of No. 4 was two and a half inches lower than the outside rail; and that the rail of No. 3 nearest to No. 4 was one inch and a half lower than the outside

rail of No. 3. This construction of the two tracks would make the cars on one track lean towards the cars on the other. The cars were shown to project over the tracks, and to be set "loosely on the trucks." The cars were evidently so close near the top as to crush and wound the plaintiff, riding on the ladder. If this occurred on the tangent, and not on the curve, it was obviously caused by the improper construction of the tracks. We think the evidence that it did occur on the tangent was sufficient to make it a question for the jury.

Speaking of the verdict, the learned counsel for the plaintiff in error say:

"It can only be accounted for on the ground that the jury were either actuated by sympathy for the plaintiff, who was most seriously injured, or prejudiced against the Southern Pacific Company. The reports are full of corporation cases in which the opinions of eminent judges, reversing the verdicts of juries on issues of fact, show unmistakably that, in cases where corporations are parties to the suit, the eyes of the jurors are put in eclipse by the huge corporation itself, so that they are unable to see the merits of the case: and, unless the courts will exercise the judicial powers vested in them for wise and beneficent purposes, then the trial of issues of fact before juries in corporation cases will become judicial mockery, and the verdicts of juries 'as sounding brass and tinkling cymbals.' "

The trial court may set aside the verdict for proper reasons. In this case the learned trial judge who heard the evidence thought it sufficient to sustain the verdict. The appellate court, on writ of error, cannot review the verdict of the jury. Although we might believe that we would have found a different verdict, we are not allowed by law to disturb the one found. If the evidence was such as to make it proper to submit the case to the jury, the appellate court has no right to set the verdict aside because the weight of evidence was against it. We are confined to questions of law, to the consideration of exceptions taken on the trial to the admission and the rejection of evidence, and to the charge of the court and its refusals to give charges. We cannot deal with questions of fact, nor the weight to be given evidence which was properly admitted. Insurance Co. v. Ward, 140 U. S. 76, 91, 11 Sup. Ct. 720, 35 L. Ed. 371. As we think there was evidence sufficient to make it proper to submit the case to the jury, the judgment must be affirmed.