# MYERS v. PITTSBURGH COAL COMPANY.

## CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 816.   Argued February 27, 1914.—Decided April 6, 1914.

The duty of the master to use reasonable diligence to provide a safe place for the employés to work is a continuing one which is discharged only when he provides and maintains a place of that character.

Where workmen are engaged in a hazardous occupation, such as underground mining, it is the duty of the master to exercise reasonable care for their safety, and not to expose them to injury by use of dangerous appliances or unsafe places to work, when such appliances and places can, by the exercise of due care, be made reasonably safe.

Where, on the evidence, reasonable men might well find that a man, found in a mangled and dying condition in a mine on a track beneath an overhead wire, was killed by negligence, and it cannot be said that no such conclusion could be reached on the testimony, it is not error to submit the question to the jury; and where, as in this case, the testimony can fairly support the verdict, it should not be set aside.

Where the court clearly instructed the jury that the defendant mineowner was not liable in case the haulage system alleged to have caused the accident was in charge of a person for whose conduct the owner was not responsible under the law, and that the owner was only liable in case that system was under charge of a person for whose conduct the owner was responsible, the charge in this respect is not unfavorable to the owner and affords no ground for reversal.

It is not error for the court to refuse to affirm a particular and immaterial point in regard to the alleged negligence of the defendant when it would only serve to possibly confuse the jury and the point has already been covered by the charge.

Where the court was not requested to charge that the employé had assumed the risk of want of proper appliances, and no exception was taken to the failure to charge as to assumption of risk, the appellate court is not called on to consider that question.

The trial court having entered judgment on a verdict for plaintiff and the Circuit Court of Appeals having reversed, and without remanding or directing a new trial, ordered judgment for defend-

ant, this court, finding there was no reversible error in the conduct of the trial, reverses the judgment of the Circuit Court of Appeals and affirms the judgment of the trial court and remands the case to the District Court which has succeeded to the jurisdiction of the Circuit Court which tried the case.

203 Fed. Rep. 221, reversed.

THE facts, which involve the validity of a verdict for death of an employé claimed to have been occasioned by the negligence of the master, are stated in the opinion.

*Mr. Charles K. Robinson,* with whom *Mr. Edward C. Goodwin* and *Mr. Frank H. Kennedy* were on the brief, for petitioner.

*Mr. Don Rose,* with whom *Mr. Charles Marshall Johnston* was on the brief, for respondent:

There was no evidence from which the jury should be permitted to find what caused Myers' death.

There was no negligence on the part of defendant. There was not failure to provide adequate light at a dangerous place. It was not a customary or usual practice in the business to have lights at switches at the time of the accident in any mine.

The employer is bound to furnish machinery, appliances and equipment that are of ordinary character and reasonable safety, and the fact that they are of ordinary character is the conclusive test of their reasonable safety. *Titus* v. *Railroad Co.,* 136 Pa. St. 618, 626; *Kehler* v. *Schwenk,* 144 Pa. St. 348; *Reese* v. *Hershey,* 163 Pa. St. 253, 257; *Keenan* v. *Waters,* 181 Pa. St. 247; *Higgins* v. *Fanning & Co.,* 195 Pa. St. 599, 602; *Service* v. *Shoneman,* 196 Pa. St. 63; *McCarthy* v. *Shoneman,* 198 Pa. St. 568; *Boop* v. *Lumber Co.,* 212 Pa. St. 525; *Fick* v. *Jackson,* 3 Pa. Sup. Ct. 378; *Washington &c. R. R.* v. *McDade,* 135 U. S. 554; *Southern Pac. Ry.* v. *Seley,* 152 U. S. 145, 151; *Kilpatrick* v. *Railroad,* 121 Fed. Rep. 11; *Law* v.

*Telegraph Co.*, 140 Fed. Rep. 558. See also *Keats* v. *Machine Co.*, 65 Fed. Rep. 940; *Crawley* v. *The Edwin*, 87 Fed. Rep. 540; *Donegan* v. *R. R.*, 165 Fed. Rep. 869.

The burden was upon the plaintiff to introduce evidence from which the jury could fairly find that it was the general, usual, and ordinary custom adopted by those in the business of mining to have a light at switches, and that defendant below had failed to comply with such general, usual, and ordinary custom.

While defendant admits the motor was being operated substantially without a headlight, this was not its negligence, as the operation of the haulage system was under the jurisdiction of the mine foreman. *Durkin* v. *Kingston Coal Co.*, 171 Pa. St. 193. See Pennsylvania Anthracite Mining Law of 1891, Pub. Law 176.

This ruling has been applied to the Pennsylvania Bituminous Coal Mining Law of May 15, 1893, Pub. Law 52. *Wolcott* v. *Erie Coal Co.*, 226 Pa. St. 210.

As to a matter entirely under the jurisdiction of the mine foreman, the operator is not liable in Pennsylvania, whatever may be the rule of law in other States. *Hall* v. *Simpson*, 203 Pa. St. 146; *Golden* v. *Mt. Jessup Coal Co.*, 225 Pa. St. 164; *D'Jorko* v. *Berwind-White Co.*, 231 Pa. St. 164, 170; *Rafferty* v. *National Mining Co.*, 234 Pa. St. 66; *Pittsburgh-Buffalo Co.* v. *Cheko*, 204 Fed. Rep. 353.

The burden was upon the plaintiff to show negligence on the part of the defendant. This burden was not sustained. There was no evidence showing negligence of defendant in permitting an exposed live trolley wire to cross a main track at an insufficient height.

Even if the trolley pole failed to automatically throw the automatic switch, and the motorman was compelled to throw it by hand, the failure of a device to work is not evidence that it is out of repair or defective, nor is it evidence of negligence on the part of the master. *Railway Co.* v. *Carr*, 153 Fed. Rep. 106, 110; *Patton* v. *Railroad*,

179 U. S. 658, 663; *Ash* v. *Verlenden Brothers*, 154 Pa. St. 246; *Brunner* v. *Blaisdell*, 170 Pa. St. 25; *Snodgrass* v. *Steel Co.*, 173 Pa. St. 228, 233; *Spees* v. *Boggs*, 198 Pa. St. 112, 116; *Surles* v. *Kistler*, 202 Pa. St. 289; *Bauman* v. *Best Mfg. Co.*, 234 Pa. St. 416; *Shandrew* v. *Railway Co.*, 142 Fed. Rep. 320.

If there was negligence it was the negligence of the duly certified mine foreman under the Pennsylvania Bituminous Coal Mining Law. Even if the alleged negligence existed, plaintiff failed to show that it was the proximate cause of the accident.

The jury cannot be permitted to guess as to the proximate cause, and the trial judge did permit them to guess as to what caused Myers' death. *Alexander* v. *Pennsylvania Water Co.*, 201 Pa. St. 252; *Marsh* v. *Lehigh Valley Railroad*, 206 Pa. St. 558; *Allen* v. *Kingston Coal Co.*, 212 Pa. St. 54.

Negligence, contributory or other, is not to be presumed, but must be shown by evidence. *Snodgrass* v. *Carnegie Steel Co.*, 173 Pa. St. 228; *Welsh* v. *Railroad Co.*, 181 Pa. St. 461; *Ziegler* v. *Simplex Foundry Co.*, 228 Pa. St. 64; *Ault* v. *Cowan*, 20 Pa. Sup. Ct. 616; *Bube* v. *Weatherly Borough*, 25 Pa. Sup. Ct. 88; *Cawley* v. *Balto. & Ohio R. Co.*, 44 Pa. Sup. Ct. 340; *Eigenbrodt* v. *Williamsport*, 44 Pa. Sup. Ct. 437; *Fahey* v. *Steel Foundry Co.*, 19 Pa. Dist. Rep. 314; *Rodgers* v. *L. & N. R. R.*, 88 Fed. Rep. 462; *Electric Co.* v. *Cronon*, 166 Fed. Rep. 651, 658; *Clare* v. *Railroad Co.*, 167 Massachusetts, 39; *Leary* v. *Fitchburg Ry. Co.*, 173 Massachusetts, 373; *Warner* v. *S. L. M. R. Co.*, 178 Missouri, 125; *Owen* v. *Ill. Cent. R. R.*, 77 Mississippi, 142; *Kenneson* v. *Railroad Co.*, 168 Massachusetts, 1.

The doctrine of assumption of risk rules this case. The employé assumes the usual dangers and risks of his employment, not only those which exist at the time he enters into his employment; but also the open and patent

dangers and risks that arise during his continuance therein, unless he makes complaint to his employer of such dangers arising, and is induced by his employer to continue in his employment by promises of change or repair. Master and Servant, 26 Cyc. 1205; *Rummell v. Dilworth*, 111 Pa. St. 343, 349; *New York &c. R. R. v. Lyons*, 119 Pa. St. 324, 335; *Bermisch v. Roberts*, 143 Pa. St. 1, 5; *Powell v. Tin Plate Co.*, 215 Pa. St. 618, 621; *Jones v. Burnham*, 217 Pa. St. 286.

The employé who continues in an employment, which by reason of defective machinery or appliances he knows to be dangerous, assumes the risk of any accident that may result therefrom. *Talbot v. Sims*, 213 Pa. St. 1, 3; *Wannamaker v. Burke*, 111 Pa. St. 423; *Brossman v. Railroad Co.*, 113 Pa. St. 490; *Railroad Co. v. Hughes*, 119 Pa. St. 301; *Boyd v. Harris*, 176 Pa. St. 484; *McCarthy v. Shoneman*, 198 Pa. St. 568; *Wilkinson v. Johns Mfg. Co.*, 198 Pa. St. 634; *Nelson v. Railway Co.*, 207 Pa. St. 363; *Lindberg v. Tube Co.*, 213 Pa. St. 545; *Danisch v. Amer*, 214 Pa. St. 105; *Sandt v. Foundry Co.*, 214 Pa. St. 215; *Schneider v. Quartz Co.*, 220 Pa. St. 548; *Fick v. Jackson*, 3 Pa. Sup. Ct. 378; *Auburn v. Tube Works*, 14 Pa. Sup. Ct. 568; *Choctaw &c. R. R. v. McDade*, 191 U. S. 64; *Butler v. Frazee*, 211 U. S. 459; *St. Louis Cordage Co. v. Miller*, 126 Fed. Rep. 495; *Burke v. Union Coal Co.*, 157 Fed. Rep. 178, 181; *M., K. & T. R. Co. v. Wilhoit*, 160 Fed. Rep. 440, 444; *Haines v. Spencer*, 167 Fed. Rep. 266, 269.

If the defect is so clearly observable that the employé must be presumed to know of it, and he continues in the master's employ without objection, he is taken to have made his election to continue in the employ notwithstanding this defect, and in such case cannot recover.

Cases *supra* and *Texas R. R. Co. v. Archibald*, 170 U. S. 665; *Gulf, &c. R. R. v. Jackson*, 65 Fed. Rep. 48; *Am. Dredging Co. v. Walls*, 84 Fed. Rep. 428; *Detroit Oil Co. v. Grable*, 94 Fed. Rep. 73; *Mining Co. v. Kettleson*, 121 Fed.

Rep. 529; *Chicago R. Co.* v. *Benton,* 132 Fed. Rep. 460; *Lake* v. *Shenango,* 160 Fed. Rep. 887; *Wollington* v. *Railroad Co.,* 161 Fed. Rep. 713; *Am. S. & T. P. Co.* v. *Urbanski,* 162 Fed. Rep. 91; *Solt* v. *Cenney,* 162 Fed. Rep. 660; *Southern Ry. Co.* v. *Lyons,* 169 Fed. Rep. 557; *Errico* v. *Company,* 170 Fed. Rep. 852; *Troxell* v. *Railroad Co.,* 180 Fed. Rep. 871.

MR. JUSTICE DAY delivered the opinion of the court.

Annie Myers brought an action in the United States Circuit Court for the Western District of Pennsylvania to recover for the death of her husband, John Myers, alleged to have been caused by the negligence of the defendant, the Pittsburgh Coal Company. Under the law of Pennsylvania she might bring this action for the benefit of herself and minor children. A verdict was rendered against the Coal Company; on writ of error the case was reversed by the Circuit Court of Appeals for the Third Circuit (203 Fed. Rep. 221), and it was brought here on writ of certiorari to that court.

The Circuit Court of Appeals was of the opinion that upon the facts shown the plaintiff had not made out the right to recover and the judgment was reversed without directing a new trial and without sending the case back to the District Court, which had succeeded to the jurisdiction of the Circuit Court, for that purpose. This was error within the doctrine of *Slocum* v. *New York Life Ins. Co.,* 228 U. S. 364; *Pedersen* v. *Del., Lack. & West. R. R. Co.,* 229 U. S. 146, 153. It is further contended that apart from the question just noticed, the Circuit Court of Appeals erred in reversing the judgment of the Circuit Court, as it did, upon the ground that there was not sufficient testimony in the case to show that the deceased came to his death by the negligence charged in the petition. To determine this question involves a brief consideration of the facts in the case.

John Myers, at the time of his death, was, and for several months had been in the employ of the Coal Company as "snapper" or brakeman in underground operations, taking part in the movement of cars in and about the mine. It appears that on the morning of the injury, a train of empty coal cars, some thirty or forty in number, was being taken down the main entry and then further down a side entry into the mine where the cars were to be subsequently distributed in the work. The manner of operation was that empty cars were hauled by a large electric motor car down the main entry to a side entry where a flying switch was made by which the motor car continued in the main entry beyond the junction of the side entry and the cars ran down the side entry for a considerable distance, then, upon signal from Myers, whose duty it was to ride upon the rear car of the train, by the waving of his cap, which contained a lamp, or by the movement of his head with cap on, the motor car followed on down the entry, the purpose being to overtake the empty cars and distribute them in the mine. Down the side entry about 157 feet from the main entry was an automatic switch, which would turn the current into the trolley wire and permit the motor car to proceed farther into the mine. It was not working properly, and the motorman alighted and turned the switch by hand, returned to the motor car and proceeded. Up to the time the motor car reached the automatic switch Myers had been seen signalling for the motor car to come on. Some distance further there was a branch of the trolley system running into another entry, and the trolley wire passed over the tracks in the side entry at a distance of about five feet seven and one-half inches above the rail, making it necessary for one of ordinary height to remain seated in the car or to stoop down. The roof of the entry was about nine feet above the rail at this point. There was no light at this switch, nor was the wire guarded in any

way. It also appears that because of ineffective carbons the headlight on the motor car was not burning, and had not been burning for several days; that requisition had been made upon the superintendent of the mine for new carbons but that there were none at the mine. The motor-man testified that when the headlight was burning he could see objects on the track clearly at a distance of twenty-five or thirty yards, and that he could stop his car in about thirteen feet. Continuing on from the switch, as we have said, the motor car suddenly ran upon something, was stopped, and it was found that Myers had been run over. He was lying in the middle of the track with his head toward the motor and his cap, upright, with the light still burning, was lying beside the track. Myers' body was badly torn and mangled before the motor car could be stopped. His tongue was found to be moving, but he shortly died from his injuries. It was also shown that Myers was a man of unusual strength and vigor, twenty-nine years of age, and to all appearances in full health and strength shortly before the injury.

The trial court submitted the case to the jury to determine whether the defendant had failed to discharge its duty of using reasonable care to provide a proper and safe place for Myers to work, that is, in failing to provide adequate lights at a dangerous place and permitting the motor car to be operated without the headlight, and also in permitting an exposed live trolley wire to cross the main track at insufficient elevation. An inspection of the record satisfies us that there was testimony enough in the case to carry these questions to the jury under the instructions which were given. The duty of the master to use reasonable diligence to provide a safe place for the employés to work, to carry on the occupation in which they are employed, is too well settled to require much consideration now. This duty is a continuing one and discharged only when the master provides and maintains a place of that

character. *Baltimore & Potomac R. R. Co.* v. *Mackey*, 157 U. S. 72, 87; *Union Pacific Ry. Co.* v. *O'Brien*, 161 U. S. 451; *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade*, 191 U. S. 64; *Kreigh* v. *Westinghouse & Co.*, 214 U. S. 249, 255. Under the case made, the jury might well have found that the overhead wire was hung too low for the safety of the men; that there was want of adequate light at this place, and that it was negligence to run the motor car into such a place without the light which it was its duty to provide. Where workmen are engaged in such mines in occupations more or less hazardous, it is the duty of the master to exercise reasonable care for their safety and not to expose them to injury by use of dangerous appliances or unsafe places to work, when the exercise of due skill and care will make the appliances and places reasonably safe. *Choctaw, Oklahoma &c. R. R. Co.* v. *McDade, supra,* 66; *Kreigh* v. *Westinghouse & Co., supra,* 256.

The opinion of the Circuit Court of Appeals placed the reversal largely upon the want of definite proof as to the manner in which Myers came to his death, whether by contact with the wire, or, if so, whether that merely disabled him or he was only injured or stunned by the fall, was seized with vertigo or other sudden sickness and fell from the car for that reason, or lost his footing by some unexpected movement of the train or voluntarily got off the car and stumbled and fell upon the track, or became bewildered in the dark and mistakenly supposed himself to be in a place of safety. The court held that all these situations were more or less probable, and, in the absence of some more accurate means of ascertaining the true condition in this regard, no recovery could be had for the wrongful causing of his death, and that an examination of the testimony brought the court to the conclusion that the jury should not have been permitted to guess as to the proximate cause of death. This question, however, was submitted to the jury and found against the defendant in

the trial court.  Unless the testimony was such that no recovery can be had upon the facts shown in any view which can be properly taken of them the verdict and judgment of the District Court must be affirmed.

That there was ample testimony to carry the question of negligence to the jury we have already said, and in any case it cannot be said as a matter of law that there was no evidence tending to show that Myers came to his death by the negligence of defendant in one or more of the ways charged in the petition.  Considering the testimony, as it must be considered in determining questions of this character in appellate courts, in its most favorable aspect to the plaintiff below, we think the jury might well have found, in view of the place at which the body of Myers was found near to the wire, with his cap gone from his head, that he came in contact with that wire and was thrown to the ground, and that he survived from contact with the wire, carrying the voltage which it did, and while in this situation was run over and killed by the approaching motor car, the operator being unable to see his body upon the track because of the want of efficient light in the entry or in the motor car.  We think reasonable men considering the testimony adduced might well have come to this conclusion, and that it was error in the appellate court to set aside the verdict for entire absence of testimony upon this subject.  In our opinion, the trial court properly left the question to the jury upon testimony which when fairly considered might sustain the verdict.  See *Humes* v. *United States*, 170 U. S. 210.

As to the contention that the trial court erred in refusing to give the instruction requested by the Coal Company to the effect that the equipment and operation of the electric haulage plant and all persons employed in the mine were in charge and subject to the orders and direction of a duly qualified mine foreman, and that, if decedent's death occurred by reason of negligence, such negligence

was that of the mine foreman and the Coal Company could not be held liable: The record shows that there was testimony tending to show that the electrical system was in charge of the electrician of the Coal Company employed as Superintendent of Electrical Equipment, who had charge of the purchase, installation, care, operation and maintenance of the electrical equipment used by the Company and who was not subject to the mine foreman. The court submitted to the jury the question whether the Coal Company had committed to the mine foreman the electric system of hauling in the interior of the mine or whether such system was in charge of an electrical engineer not accountable to the mine foreman, distinctly telling the jury that if the mine foreman was in charge in this respect the company would not be responsible, but if they found that the Coal Company had excluded from the control of the mine foreman the electric haulage system and that the negligence of the Coal Company was the direct and proximate cause of the death of the plaintiff's husband, there must be a recovery. The charge in this respect was as favorable as the company was entitled to have given.

As to the objection that the court erred in failing to give the instruction requested by the defendant concerning the operation of the automatic switch, to the effect that if it did not work on the trip on which the decedent was run over and even if it was out of order those conditions would not contribute to the running over of the decedent by the motor car or to his death, it is sufficient to say that the court in its charge to the jury did not submit a question of negligence specifically concerning this automatic switch and its effect if out of repair, and to have affirmed this point by giving it to the jury would only have served to possibly confuse the jury upon a point immaterial to the plaintiff's recovery in view of the manner in which the case was given in charge to the jury.

We have examined the charge and the exceptions thereto and requests for instructions and are of opinion that the trial court fairly submitted the questions involved to the jury in a charge to which there was no substantial objection.

As to the suggestion that the deceased had assumed the risk of the want of proper appliances and the defective character of the light at the place in which he worked and was injured, we do not find that the court was requested to make any charge upon that subject or that any exception was taken to the court's failure to charge as to assumption of risk. In that state of the record, the appellate court was not called upon to consider that question. See *Humes* v. *United States, supra.* The Circuit Court of Appeals reversed the case for the reason, which we have stated, that there was an entire failure of adequate testimony to show that Myers came to his death by the negligence of the company in the manner charged. As we have said, we think that was an erroneous conclusion.

*It follows that the judgment of the Circuit Court of Appeals must be reversed and the judgment of the Circuit Court affirmed and the case remanded to the District Court.*