### GRAY v. DAVIS, Director General of Railroads.

(Circuit Court of Appeals, First Circuit. December 11, 1923.)

No. 1628.

1. **Appeal and error ⟨⟩927(7)—Evidence considered in aspect most favorable to plaintiff against whom verdict directed.**

    In determining whether trial court erred in directing verdict for defendant, the evidence must be considered in the aspect most favorable to the plaintiff.

2. **Master and servant ⟨⟩210(4)—Brakeman held not to assume risk of injury at station.**

    A head brakeman, whose foot was caught between step on engine and a station platform, as he was alighting, *held* not to have assumed the risk.

3. **Master and servant ⟨⟩285(2)—Cause of injury to brakeman held for jury.**

    In an action for death of brakeman, *held*, that it was error to direct verdict on ground that cause of accident was speculative and conjectural, in view of permissible inference that deceased had his foot caught between step on engine and waving contour line of the platform while alighting.

4. **Master and servant ⟨⟩286(15)—Railroad's negligence in maintaining platform held for jury.**

    In action for death of brakeman, whose heel caught on station platform as he was standing on engine step, preparatory to alighting in the performance of his duties, whether the master was negligent in providing a place for the deceased to do his work *held* for the jury.

5. **Master and servant ⟨⟩101, 102(8)—Master must exercise reasonable care to provide safe place.**

    It is a duty of a master to exercise reasonable care to provide a proper and safe place for a servant to do his work.

---

⟨⟩For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

In Error to the District Court of the United States for the District of New Hampshire; John A. Peters, Judge.

Action by Leah M. Gray, administratrix of the estate of Glen E. Gray, deceased, against James C. Davis, Director General of Railroads. Judgment for defendant, and plaintiff brings error. Reversed and remanded.

Alexander Murchie, of Concord, N. H. (Murchie & Murchie, of Concord, N. H., on the brief), for plaintiff in error.

Eri C. Oakes, of Lancaster, N. H. (Shurtleff & Oakes, of Lancaster, N. H., on the brief), for defendant in error.

Before BINGHAM, JOHNSON, and ANDERSON, Circuit Judges.

ANDERSON, Circuit Judge. This was an action to recover for the death of Glen E. Gray on October 13, 1919, at Lunenburg, Vt. Gray was head brakeman on one of the defendant's freight trains, running from Bartlett, N. H., to St. Johnsbury, Vt. At the trial the defendant offered no evidence, and at the close of all the evidence its motion for a directed verdict was allowed on one or all of three grounds:

(1) No evidence of negligence.

(2) Risk assumed.

(3) Cause of the accident merely speculative and conjectural.

[1, 2] It is plain that there was no assumption of risk. The other two grounds require a careful statement and consideration of the evidence, which must, of course, be considered in the aspect most favorable to the plaintiff. Myers v. Pittsburgh Coal Co., 233 U. S. 184, 34 Sup. Ct. 559, 58 L. Ed. 906; Union Pacific R. R. Co. v. Huxoll, 245 U. S. 535, 539, 38 Sup. Ct. 187, 62 L. Ed. 455.

The evidence would have warranted the jury in finding:

That Gray was a healthy, competent, careful, and experienced brakeman, 30 years old; that he was in the cab of the engine as it approached Lunenburg station; that at that point the track curves in towards the station, so that the momentum of the train would carry the engine and tender as far towards the platform of the station as the flange of the wheels would permit; that it was Gray's duty, as the train slowly drew in towards the station, to jump from the engine to get instructions from the local station agent as to work there to be done; that it was bright daylight, between 2 and 3 o'clock in the afternoon, dry on the steps and on the station platform upon which he tried to alight; that, as the train approached at proper speed, Gray backed down the steps at the end of the tender, grasping the grabiron on the engine with his right hand and the grabiron on the tender with his left hand; that the fireman saw his right hand leave the grabiron in natural fashion, and, shortly after, his left hand suddenly slide rapidly down the other grabiron in such an unusual fashion that the fireman knew something was wrong, and shouted to the engineer to stop, who thereupon made "an emergency stop;" that Gray was found between the track and the end of the platform, about opposite the women's waiting room door in the station, his right foot severed above the ankle, his left leg broken, and so injured that he shortly died.

That the lower step of the type of engine on which Gray was riding protruded about $1\frac{1}{2}$ inches farther than on the earlier type; that, as the engine passed this platform; the distance between this lower step on which the jury might find that Gray would naturally have been standing, and the planks of the platform, varied from 5 to 8 inches; that also, as the engine passed, the step would part of the time be lower than the platform, and part of the time level with or somewhat higher than the platform—that is, as the step, with Gray on it, passed this platform, the edge of the platform constituted, as to the moving step, a waving line, in and out on the horizontal, and also up and down on the vertical.

That after the accident scraping marks were found, $1\frac{1}{2}$ to 2 feet long, on the ends of the platform planks, perhaps 30 to 40 feet easterly from the point where Gray was picked up, and that beyond these marks there were scraping marks on the ground; also that beyond the marks on the end of the platform planks there were marks on the platform itself "something like a scraping on top;" that Gray wore heavy work-shoes of about $8\frac{1}{2}$ size.

[3] The parol evidence thus outlined takes, naturally enough, additional significance when considered in connection with the photographs of the locus, which have been put before us. Applying the rule of most favorable construction to the plaintiff, we cannot say that the jury would not have been warranted in finding that Gray's death was caused by his left foot being caught in a sort of trap between the step and the end of the station platform, so that his left foot, upon the ball of which he would naturally be resting as he turned to alight from the step, was pulled down, off the step, causing his left hand to slide suddenly down the grabiron, and drawing him under the train.

If the accident had been caused by his jumping in the usual fashion from the step, slipping on the platform, and then falling under the train, his left hand would not have slid down the grabiron in such unnatural fashion as to signify to the fireman that something was wrong. The movement of his hand was consistent with his having been pulled off the step, and inconsistent with his having made a miscalculated or unfortunate jump.

We cannot say that it is not a permissible inference that Gray was thus trapped to his death by having his foot caught between the step and the waving contour line of the platform. The relation between the moving step and the edge of the platform—in and out and up and down—taken in connection with the sudden and otherwise unexplained movement of his hand on the grabiron, might by a jury be found to make the cause of the accident something more than a mere matter of conjecture or guess. If he rested on the outer part of the lower step, on the ball of his foot, as he naturally and properly would, his heel would project more than 5 inches, so that it might have been caught on the end of the planks and drawn under the platform if, as the engine moved forward, the step was, as related to the platform edge, rising, and also nearing the platform.

These scraping marks on the platform might have been found to have been made by Gray's shoes, the ones on the end of the planks by his left shoe, and the mark on the top by his right shoe, as he

strove to pull his left out of the space between the step and the platform. The cause of the accident was for the jury.

[4, 5] Perhaps somewhat closer is the question as to the defendant's negligence. But, on the whole, we think this, too, was for the jury. It was, of course, the duty of the defendant to exercise reasonable care to provide a proper and safe place for Gray to do his work. Myers v. Pittsburgh Coal Co., 233 U. S. 184, 191, 192, 34 Sup. Ct. 559, 58 L. Ed. 906. The place provided, where Gray was injured to his death, was the step on that tender, moving along the wavy contour of the edge of that platform and surging towards it.

As noted above, the evidence tended to show that the later type of engine had wider, perhaps lower, steps than the earlier type, thus, as the jury might find, increasing the danger of trapping the foot of an alighting brakeman, as it might have been found that Gray's foot was trapped, between the step and the edge of this platform.

We think a jury might properly find that the place where Gray was required to stand was of such a dangerous character, due to the relation of distance and movement between the step and the platform, that the railroad was at fault in setting one to work there. The evidence shows, and it is plain enough as matter of common sense, that, if the defendant was to make use of such a step, the danger might have been easily averted, either by lowering the platform, or by sawing off the ends of the planks, so as to leave a wider space between the step and the platform.

It would not be fruitful to analyze and compare the cases most nearly in point. Some of them are Myers v. Pittsburgh Coal Co., supra, and cases cited on page 192 of 233 U. S., 34 Sup. Ct. 559, 58 L. Ed. 906; Choctaw, etc., R. R. v. McDade, 191 U. S. 64, 24 Sup. Ct. 24, 48 L. Ed. 96; Taber v. Davis (C. C. A.) 280 Fed. 612; New York Central v. Gapinski, 249 Fed. 346, 161 C. C. A. 354.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers costs in this court.

---

⬅For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes