**FORD v. UNITED STATES.**
**No. 2454.**

Circuit Court of Appeals, First Circuit.
Nov. 8, 1930.

Dwight L. Allison, of Boston, Mass., for appellant.

John Laurence Hurley, Sp. Asst. U. S. Atty., of Boston, Mass. (Frederick H. Tarr, U. S. Atty., and John J. Walsh, Jr., Asst. U. S. Atty., both of Boston, Mass., James T. Brady, Acting Gen. Counsel, U. S. Veterans' Bureau, of Washington, D. C., William J. Hession, Atty., U. S. Veterans' Bureau, of Boston, Mass., and Bayless L. Guffy, Atty., U. S. Veterans' Bureau, of Washington, D. C., on the brief), for the United States.

Before BINGHAM, ANDERSON, and WILSON, Circuit Judges.

ANDERSON, Circuit Judge.

This is a suit to recover under a war risk term insurance for $5,000, which lapsed on February 28, 1919. The appellant enlisted as a seaman in the United States Navy on June 2, 1917, and was discharged on January 19, 1919. His contention is that, while the insurance was in force, he became permanently and totally disabled as a result of disease or disability, and has ever since been permanently and totally disabled. He prays for judgment in monthly payments of $28.75 from February 28, 1919, to the date of filing of his petition.

At the close of the plaintiff's case the court granted the defendant's motion to order a verdict for the United States. The sole question presented on this appeal is whether the plaintiff was entitled to go to the jury.

Under section 5 of the World War Veterans' Act, 43 Stat. 608, 38 USCA § 426, and section 13 of the War Risk Insurance Act of Act Oct. 6, 1917, 40 Stat. 398, as amended by Act May 29, 1918, § 1, 40 Stat. 555, the usual authority is vested in the Director and the Secretary of the Treasury to make regulations not inconsistent with the act appropriate to carry out its purposes. Under this authority, Regulation No. 11 was issued defining "total and permanent disability" as follows:

"Any impairment of mind or body which renders it impossible for the disabled person to follow continuously any substantially gain-

ful occupation shall be deemed, in Articles III and IV, to be total disability.

" 'Total disability' shall be deemed to be 'permanent' whenever it is founded upon conditions which render it reasonably certain that it will continue throughout the life of the person suffering from it. Whenever it shall be established that any person to whom any installment of insurance has been paid as provided in Article IV on the ground that the insured has become totally and permanently disabled has recovered the ability to continuously follow any substantially gainful occupation the payment of installments of insurance shall be discontinued forthwith and no further installments thereof shall be paid so long as such recovered ability shall continue."

■ We think the word "continuously" should be construed as meaning with reasonable regularity; that it does not cover mere periods of disability such as are ordinarily incident to the activities of people in generally sound health.

■ On the other hand, if such claimants are able to follow gainful occupations only spasmodically, with frequent interruptions due to disability, they are entitled to recover under the act.

■ It is well settled that, on such a question as is here presented, the plaintiff is entitled to the most favorable construction that a jury might be warranted in putting on the evidence. Heisson v. Dickinson (C. C. A.) 35 F.(2d) 270, and cases cited; Bangor & Aroostook R. R. v. Jones (C. C. A.) 36 F. (2d) 886; Gray, Administratrix, v. Davis, Director General of R. R. (C. C. A.) 294 F. 57.

■ And the act itself is to be liberally construed in favor of such claimants. In White v. United States, 270 U. S. 175, 180, 46 S. Ct. 274, 275, 70 L. Ed. 530, Mr. Justice Holmes said of such contracts: "The insurance was a contract, to be sure, for which a premium was paid, but it was not one entered into by the United States for gain. All soldiers were given a right to it and the relation of the Government to them if not paternal was at least avuncular. It was a relation of benevolence established by the Government at considerable cost to itself for the soldier's good."

■ We turn now to summarize the evidence in the appellant's behalf:

He testified that after his enlistment in 1917 he was at the Hampton Roads Naval Air Station, doing beach duty, "leading the planes in and from the water and carrying the pilots"; that in this work it was necessary for him to go into the water in order to carry the pilots from the beach and place them in the planes; that while doing this work he was taken ill, and was shipped to the Naval Base Hospital (probably) in November, 1918; that he was there about two months, and also had thirteen sick leaves while in the service; that at that time he had severe sliding pains in his back, which persisted until his discharge in January, 1919; that after his discharge he went to work in February, 1919, at the Plymouth Rubber Company at Canton, and worked a few days, then lay off until some time in March, 1919, because of pains in his back; that he worked off and on until July, when he left the job until the last of September; that he had the pains in his back and could not seem to sleep; that this prevented him from working on the job; that in September he went back on the job, and left it again in November, when he left under the doctor's orders and remained at home until March, 1920. Between March and June, 1920, he was again at work, but lost considerable time; and in June, because of his condition, he left his job and remained away from work until December, when he got married. Then he went to work and stayed until March, 1921; that his average working term was about the same as before; that for the entire period from December, 1920, until March, 1921, "I would say I got 2½ or 3 days a week"; that from April to July he lost time, and then quit the job again; that after more spasmodic work, he finally, in November, 1921, went to the Veterans' Bureau in Boston, and was sent to the Parker Hill Hospital on December 1, 1921, and remained there until January 28, 1922, when he was discharged, as the record shows, with his condition unchanged. He took, through the Veterans' Bureau, vocational training at the Franklin Institute, Boston, from March, 1922, until February, 1924; then, under the same system of institutional training, he went to work for the Panther Rubber Company at Stoughton, and stayed there until the 1st of April, 1925; that since April, 1925, he has done little or no work.

On cross-examination he admitted that, during his period of vocational training, he was at various times absent without leave and guilty of intoxication. It appears that the Bureau had warned him as follows:

"You are advised that the Rehabilitation Survey Group has decided that your training be permanently discontinued on account of the following conditions:

"All reasonable efforts having been exhausted to train you to the point of employability, failure to avail yourself properly of the training provided; misconduct preventing progress and ultimate placement in employment, absence without leave and failure to co-operate with the Bureau; also disorderly conduct at your place of training."

Up to the time of the trial, he was receiving treatments from the Veterans' Bureau called "Physio-therapy, baking my back"; that he went to the Bureau two or three times a week for such treatments; he also had, since 1921, been wearing a brace provided by the Veterans' Bureau; since September, 1921, he had had an abscess, that discharged pus when he coughed, and had been troubled with a cough since 1920.

Dr. Lynch gave undisputed testimony to the effect that Ford was in 1929 suffering from spinal arthritis, an infectious process of the joints of the spinal column; that the case was a progressive one; that his advice to Ford was to quit work and rest; that Ford suffered pain, and some days he could neither walk nor sleep. Dr. Walsh testified that, helped out by X-rays taken shortly before the trial, he had made a diagnosis of Ford's case, and that he had arthritis with ankylosis of the sacroiliac joint; that he first examined Ford in 1921 or 1922; that he saw no difference on the Saturday prior to the trial, and "I think he is permanently disabled."

"Q. 13. Do you think he is able to follow a gainful occupation? A. No, he is not.

"Q. 14. What do you think about the future? A. I should think it was more doubtful whether he would improve, in fact, to do very much, if anything, for himself.

"Q. 15. From the time that you first saw him up until your last examination has there been any improvement? A. I can't see any."

Dr. McKenna, who attended Ford in 1919 and 1920, is dead—which the jury might properly consider in considering the lack of physicians' evidence as to Ford's condition shortly after his return from the service.

Without further detailed review of the evidence, we think it was for the jury to say whether Ford was permanently and totally disabled prior to February 28, 1919.

The judgment of the District Court is reversed, and the case is remanded to that court for further proceedings not inconsistent with this opinion.