**AMERICAN LIFE INS. CO. et al. v. FLORIDA ANGLERS ASSOCIATION, Inc.**

No. 13150.

United States Court of Appeals
Fifth Circuit.

Nov. 30, 1950.

Rehearing Denied Jan. 9, 1951.

John D. Higgins, F. R. Ingram, Birmingham, Ala., for appellants.

Horace C. Wilkinson, Birmingham, Ala., for appellee.

Before McCORD, BORAH and RUSSELL, Circuit Judges.

McCORD, Circuit Judge.

The Florida Anglers Association, a Florida corporation, brought this suit against American Life Insurance Company, an Alabama corporation, and B. P. Autrey for the sum of $17,500.00 together with interest thereon as money had and received to the use of The Florida Anglers Association. A jury returned a verdict for The Florida Anglers Association as against both defendants for the full amount sued for plus interest. The trial court thereafter entered judgment for plaintiff and overruled motion for new trial.

The principal questions presented for our determination are whether there is substantial evidence to support the verdict, and whether the trial court erred in the granting and refusing of certain charges.

The important and material evidence reveals that in the summer of 1948 S. L. Cheek, Jr., president and manager of The Florida Anglers Association, employed one Stedham Acker to aid the Association in securing a loan with which to pay off a mortgage on some property which it owned in Florida, and to further promote the business being conducted on the property. The mortgage was for the sum of $153,000.00, which amount represented about 75% of the purchase price of the property.

After negotiations, Cheek and Acker persuaded the mortgagees of the property, the Milams, to accept $98,000.00 in full satisfaction of the mortgage debt. At that time it was agreed between Cheek and Acker that the Florida Anglers Association would pay Acker a fee of $2,500.00 for negotiating a loan sufficient to pay off the mortgage and further promote the business. With this end in view, Cheek and Acker called on B. P. Autrey, the Agency Manager of the American Life Insurance Company in Birmingham, Alabama who agreed to submit the request for a loan to the officers of the Company. During the course of their conference, Acker recommended approval of the proposed loan to Autrey, and asked Autrey what he was going to get out of it in the event the desired loan was procured. There is testimony to the effect that Autrey then replied, "Well, I just work for the American Life Insurance Company, I don't get anything out of it. You can buy me a suit up here at Burch Tailoring Company if I get the loan through for you." It is without dispute that at the time of the above conversation Autrey was being paid a salary of six hundred dollars per month plus an expense account of four hundred dollars per month by the American Life Insurance Company. In this connection, Autrey testified that he received a total of approximately $48,000.00 income from the Company during the year 1948, and that he had about the same amount of additional income that year from other sources.

A short time after the above conference Autrey, together with Judge T. W. Wert, the president of the American Life Insurance Company, and J. W. Harrell, the Company's attorney at Jacksonville, Florida, made a trip down to Orlando to inspect the Florida property. Later Acker called Cheek over the telephone and informed him the loan had been approved. Acker also stated in the conversation that Autrey intended to withhold the sum of $17,500.00 for services rendered in connection with the loan, whereupon Cheek replied, "No, we are not going to pay Mr. Autrey anything." A mortgage and note for $117,500.00 was afterwards forwarded to Cheek by the Company's attorney, Harrell, for execution on behalf of the Florida Anglers Association. Cheek again talked with Acker about the loan, who informed him that Autrey insisted upon withholding $17,500.00 of the money, so Cheek refused to execute the papers and they were returned. Afterwards Acker discussed the matter with Autrey again, and later informed Cheek that Autrey had agreed to disburse the additional $17,500.00 for the further promotion of the property after the loan was closed. Also, because of some expense involved in clearing the title to the

property, the company agreed upon request to increase the amount of the loan $2,000.00, or to the aggregate sum of $119,500.00, and the Company's attorney, Harrell, was given notice to that effect.

Harrell and Acker met Cheek at an abstract company office in Orlando, Florida, on the 28th day of January, 1949, for the purpose of closing the loan. Harrell had brought with him a check of the American Life Insurance Company in the amount of $119,500.00, payable to the order of Florida Anglers Association, and J. W. Harrell. Cheek requested Harrell to give him the check so that he could deposit it to the account of the Florida Anglers Association and disburse the needed funds. Harrell replied, "No, I can't do that, I have instructions from Mr. Autrey as to how to disburse it. I will have to disburse it in this manner to avoid any question of any usury down here."[1]

There is evidence that Cheek, while acting in reliance upon the above representations by Harrell and Acker as to the $17,500.00 in dispute, endorsed the check for the Florida Anglers Association, and Harrell further endorsed the check "for collection and credit the proceeds to the account of J. W. Harrell". Harrell deposited the check to his credit in the bank on January 31, 1949.[2]

Autrey received from Harrell a check for $17,500.00, dated January 28, 1949, which he deposited in a Birmingham, Alabama bank on January 31st. Thereafter, on February 3, 1949, after the above check had cleared, Autrey gave Mrs. E. B. Montgomery, vice-president of the American Life Insurance Company, two checks aggregating the sum of $7,400.00, on both of which were marked "Real Estate Commission". On the same day he further gave Judge Wert, the president of the Company, a check for $2,400.00, also marked "Real Estate Commission". Both Autrey and Judge Wert testified that these checks had no connection with the Florida Anglers Association loan, but were in payment or part payment on other and entirely different transactions.

The attorney, Harrell, testified that Judge Wert, the president of the American Life Insurance Company, gave him instructions with reference to closing the loan on the Florida property, and that his instructions were "To take the check (for $119,500.00) to Florida, see that the mortgage was properly executed and filed for record, and to deliver the proceeds to the Florida Anglers Association." Judge Wert testified that he never heard about Autrey getting $17,500.00 out of the transaction until after this suit was filed. Moreover, there is some evidence to the effect that after Cheek had originally refused to execute the note and mortgage, Autrey, without the knowledge or consent of Cheek, secretly employed Acker to help him put the deal over and get the $17,500.00, and that Autrey later paid Acker $500.00 for his services in helping to close the transaction favorably.

Where an agent is employed to negotiate a sale, purchase, or exchange of property, he may not, without the knowledge and consent of his principal, enter into a contract for compensation with the

---

1. In this connection, Cheek testified:

Q. "Was that all the conversation you had with respect to the $17,500 item?

A. "No, I asked Mr. Harrell again, why not deposit the check in my account, in The Florida Anglers Association account. I said 'We could disburse the money just as well as you can', and he again emphatically told me he would not do it that way, that this was the only way he would close it. At that time I asked Mr. Acker, I said 'What's going to become of our $17,500?' He said 'Go ahead and endorse it, and Mr. Autrey

has said he will dispense that for promotion of the operation later on.'"

2. Harrell issued checks against his account as follows:

| | |
|---|---:|
| Milam | $ 98,000.00 |
| Tax Collector | 1,601.16 |
| Tax Collector | 121.22 |
| Autrey | 17,500.00 |
| Acker (on Florida Anglers Fee) | 2,145.52 |
| Cash | 125.00 |
| | $119,492.90 |
| Collection charges and telegram | 7.10 |
| | $119,500.00 |

other party to the transaction. Such contract is void. Connelly v. Special Road & Bridge District No. 5, 99 Fla. 456, 126 So. 794, 71 A.L.R. 923; Boswell v. Cunningham, 32 Fla. 277, 13 So. 354, 21 L.R.A. 54; Oscanyan v. Winchester R. A. Co., 103 U. S. 261, 26 L.Ed. 539; see also, 13 A.L.R. 907, 924. Here, there is testimony by the president of the American Life Insurance Company that he had no knowledge of the proposed $17,500.00 "brokerage fee" which Harrell had instructions to withhold for Autrey. To the contrary, it was shown that Harrell had been specifically directed by Judge Wert to deliver the proceeds of the loan to the Florida Anglers Association after the mortgage had been properly executed and filed for record. Manifestly, under the evidence adduced, it was open to the jury to find that Harrell failed to carry out the Company's orders regarding the transaction; that he and Acker were secretly representing Autrey in withholding the sum in dispute; and finally, that Acker misrepresented the true facts to Cheek in order to get the Florida Anglers Association's endorsement on the check. There is ample evidence from which the jury could reasonably have found the Company responsible for the acts of its agents, Autrey and Harrell, in withholding $17,500.00 of the amount of the loan contrary to instructions. The fact that the agent, Autrey, is personally liable would in no wise relieve the Company from its duty to see that the money was delivered to the Florida Anglers Association as agreed. See Land Mortgage Investment Agency Co. v. Preston, 119 Ala. 290, 24 So. 707; Wynn v. Hoffman, 203 Ala. 72, 82 So. 72.

We conclude there is abundant evidence in the record to support the verdict of the jury as against both the American Life Insurance Company and B. P. Autrey. Furthermore, it is well settled that where, as here, the jury was warranted under all the evidence in returning its verdict, it is not within our province to disturb that verdict on appeal merely because the evidence is conflicting or in sharp dispute. See Myers v. Pittsburgh Coal Company, 233 U.S. 184, 34 S.Ct. 559, 58 L.Ed. 906; Liquid Veneer Corp. v. Smuckler, 9 Cir., 90 F.2d 196;

Southern Pac. Company v. Covey, 5 Cir., 109 F. 416.

 The charge of the trial court was full and fair and substantially covered every issue in the case. If error was committed by the Court in answering a question for the jury in the absence of counsel for the defendants, it was error without injury, since the statement made was substantially a repetition of matter covered by the oral charge. We are unable to find any reversible error either in the rulings of the court on the evidence, or in the granting or refusing of the many charges requested. We further find no error was committed in the overruling of the motion for new trial. Highway Const. Co. of Ohio v. City of Miami, 5 Cir., 126 F.2d 777.

The judgment is affirmed.