BOSWELL & ROSE, ET. AL., APPELLANTS, VS. CARRIE H. CUNNINGHAM, APPELLEE.

PRINCIPAL AND AGENT—AGENT FOR PURCHASE TAKING TITLE TO SELF HOLDS AS TRUSTEE FOR PRINCIPAL.

1. Where the relation of principal and agent exists, the utmost good faith is exacted in all of the transactions of the agent toward his principal in all matters connected with the subject of the employment.

2. Where an agent is employed to make a purchase of land, the principal is entitled to all the skill, ability and industry of such agent to make the purchase on the best terms that can be had, and is entitled to the property at the price which the agent pays.

3. An agent is not permitted, without the assent of his principal, to acquire an interest in the subject-matter of the agency, adverse to his principal. During the continuation of the agency the agent can not put himself in a position adverse to that of his principal.

4. Where the agent employed to purchase for his principal, purchases for himself, all the profits and advantages gained in the transaction belong to the principal, and the agent will be held to have taken the property as trustee for his principal. Such a trust comes within the exception provided for in the statute of frauds (section 2, page 214, McClellan's Digest, Section 1951 Revised Statutes), as it arises out of the construction and operation of law, and may be established by parol.

5. C. employed the firm of B. & R., copartners in the real estate business, as her agents to purchase for her a certain block of land.   They effected the purchase at a certain price satisfactory to C., and obtained a deed to C. for the premises that was delivered to them in escrow by the vendor until the purchase money was paid.   C. paid $100 of the purchase money and left immediately for Ohio, with the knowledge of B. & R., for the purpose of there obtaining the balance of the purchase money, and on arriving there and securing the requisite funds, at once notified B. & R. by telegram that the money was ready to be paid as soon as they should furnish to her lawyer an abstract of the title to the premises.   Two days after receiving this notification B., one of said firm, purchased the property for himself at considerably less than the price that C. was to have paid, and used C's. $100 payment in the purchase for himself, and on same day notified C. by letter, not of his purchase for himself, but that the vendor had then demanded immediate payment of the balance of the purchase money, and not being able instantly to get it, had taken back the deed to C. left in escrow, and had declared the trade off.   Within a few days thereafter, upon C's. arrival from Ohio, on learning of B's. purchase of the property for himself, she promptly tendered the balance of the purchase money that she had agreed to pay for the property, which B. refused to accept.   Under these circumstances: *Held* (1), That B. took the property in trust for C., and that upon C. paying the price at which B. purchased it, B. would be required to convey to C.; (2), that C., after refunding the money paid by B. for the property, was entitled to all the moneys with interest for which B. had sold and conveyed portions of the property to others.

Appeal from the Circuit Court for Osceola county.

The facts of the case are stated in the opinion of the court.

*Beggs & Palmer*, and *C. F. Akers* for Appellants.

*Foster & Gunby* for Appellee.

TAYLOR, J. :

Carrie H. Cunningham, the appellee, on the 27th of April, 1886, filed her bill in equity in the Circuit Court for Orange county against William Boswell and A. J. Rose, as copartners under the firm name of Boswell & Rose, and against Rosa A. Rose, wife of A. J. Rose, and John M. Bryan.

The substantial allegations of the bill were as follows: That on the 19th of March, 1886, the complainant, being desirous of purchasing a certain parcel of land containing two acres, situated in Kissimmee City, in (what was then the territory of) Orange county, and known as Block M in Patrick's addition to said Kissimmee City, employed the defendants, William Boswell and A. J. Rose as copartners in the business of real estate agents, to effect the purchase. That the defendant Bryan was then the owner in fee of said land. That Boswell & Rose, as her agents, duly authorized by her, purchased said land of said Bryan for her for the sum of $2,150 upon the following terms: $100 to be then and there paid, and the remainder within thirty days from said 19th of March. That Boswell & Rose then and there advanced for her to Bryan the $100 payment, she reimbursing them three days thereafter. That Bryan then and there delivered to said firm a deed to said land duly executed by himself and wife, which deed was to the complainant as grantee. That said deed was left with said firm to be delivered to complainant upon the payment by her of the remainder of the purchase money within thirty days. That said firm then agreed with her to examine the title of said land, and to furnish an abstract thereof for examination before she should make

final payment. That on the 22nd of March, 1886, with the knowledge of said firm she started for Cincinnati, Ohio, for the purpose of procuring the money to pay for said land. That upon her arrival in Cincinnati, she at once procured the necessary funds; and on the 27th of said March, caused said firm to be notified that she was ready and willing to pay for said land whenever the title should be examined. That on the 29th day of said March, Bryan, desiring to obtain $1,000, called upon said firm to obtain that sum for and on account of her said purchase, but in no manner to rescind said sale to her. That said firm then and there advanced to said Bryan about the amount that he requested. That on the same day the said firm, with the intent and purpose to deceive and defraud her, wrote her the following letter:

KISSIMMEE CITY, FLA., March 29, 1886.

*Mrs. Carrie H. Cunningham, Cincinnati, Ohio:*

DEAR MADAM:—We regret to inform you that on account of not having a remittance from you as arranged, the negotiations for the purchase of that two acre block has fallen through. Mr. Bryan called at our office this morning and demanded payment of purchase money. We applied to Mr. Murphy, who informed us that he was in communication with you in regard to the business, but he was unable to give us any other information, except that he expected your arrival some time this week. However, as no funds were in hand, Mr. Bryan refused to wait, stating that he must have the money at once, that the purchase was to be in cash. Under the circumstances we had no alternative but to declare off. We hold $100 to your order.

Respectfully yours,

BOSWELL & ROSE.

That the assertion in said letter that Bryan had refused to wait, and that they, the said firm, had declared the trade off, was false. That in truth and in fact the said Bryan had not refused to wait; that he understood that the sum then paid him by said firm was on behalf of her purchase, and that upon her return within said thirty days she would be entitled to the delivery of said deed upon payment of said balance of purchase money. That said firm neglecting their promise and duty did not and have not at any time furnished an abstract of the title of said land for examination by or on her behalf. That on the 31st day of said March she wrote a letter to said Boswell that was duly recived by him calling his attention to the abstract to be furnished. That on the 30th day of said March, in pursuance of said intent to defraud her, the said firm procured from said Bryan the execution of a deed to said land, with the name of the grantee left blank therein, upon the pretence that if she did not return, the said blank deed would enable them to sell said land. That they then assured said Bryan that upon her return she should have the deed to her of the land if she desired. That on the said 30th of March the said firm in pursuance of the fraudulent design aforesaid, caused said blank deed to be filled out with the name of said Boswell as grantee therein. That in furtherance of said fraud the said Boswell on the same day executed a deed to Rosa A. Rose, wife of his copartner, A. J. Rose, conveying to her one-half of said land. That Rosa A. Rose paid nothing therefor, and had notice of complainant's rights and interests in the premises. That she received said deed by the request of her husband and for his benefit, and that she was not a *bona fide* purchaser for value. That said Boswell & Rose, in

furtherance of said fraud, have caused the said two last mentioned deeds to be recorded. That on or about the 12th of April, 1886, she returned to Kissimmee, and called upon said firm, who informed her that they had purchased said land and had sold a part thereof. That on the 15th of said April she tendered to said firm the sum of $2,050, being the balance of the amount of the purchase money she was to have paid, and then and there tendered them the further sum of $10 for interest on the sum advanced by said firm to said Bryan, and any expense connected therewith, and at the same time demanded of them a good and sufficient deed of the premises, which demand they refused to comply with. That at some time unknown to her the said firm have paid to Bryan the balance due him. The bill makes profert of all sums justly due from the complainant in the premises, and prays that the defendants, Boswell & Rose, and Rosa A. Rose, may be required to convey and release to complainant all interests that they have acquired in the land; and that they and each of them be decreed to account to her for any sums received from any parts of said land sold; and that they be enjoined from setting up any claim adverse to the complainant, in the premises.

The defendants, Boswell & Rose, jointly answered the bill, but their answer was verified by Boswell alone. They admit their agency for the complainant for the purchase of the land, but deny that thirty days, or any time whatever, was given by Bryan for the completion of the purchase; but, on the contrary, aver that it was expressly declared by Bryan that the sale should be for cash, and that the purchase money should be paid at once, and that the transaction being a cash one, was made the essence of the sale, and that

the complainant well understood such to be the case. That she left Kissimmee for Cincinnati without making any arrangements to pay for the land. The taking of the deed from Bryan to Boswell is admitted, with this explanation: That shortly after the complainant's departure for Cincinnati, to-wit: on the 29th of March, 1886, Bryan came to their office and demanded payment of the whole purchase money at once, or that he would declare the sale off. That they then made inquiry of one Murphy, whom they knew had some business transactions with complainant, as to when she would return, or what information he could give as to her intentions, etc., but Murphy in reply stated that he could give no other information than that he expected her to return that week. That they informed Bryan of this fact, and stated also that they had no funds on hand belonging to complainant, and had not heard from her since her departure, but that they were informed that she would return soon. Bryan then refused to wait, and demanded his deed, which defendants gave up. Defendant Boswell then purchased the land from Bryan, and upon the same day wrote the letter to Mrs. Cunningham that is copied above. The answer further avers that the complainant led them to believe that she had the money ready to pay for the land; and, laboring under this information, defendants informed Bryan, with complainant's knowledge, that the money was ready; and that on the same afternoon, *i. e.*, the afternoon of the day of the purchase, Bryan came into the office of defendants and demanded payment of the entire amount, but defendant Rose prevailed on him to accept $100 in part payment, which he accepted with the understanding that the balance was to be paid on the following Tuesday. The answer denies that any

abstract of title had ever been agreed to be furnished by either Bryan or said firm. The answer also avers that the sale from Bryan to Boswell was *bona fide*; and that the sale from Boswell to Rosa A. Rose was made in good faith for a valuable consideration, and that the deed made to her to an undivided one-half interest in the same was made in good faith. It further avers that after the sale from Bryan to the complainant was abandoned by Bryan, they (the said firm) offered to refund to complainant the $100 that she had previously paid them on said purchase, but that she refused to receive it. The answer further avers that the letters and telegrams written and sent by complainant were all written subsequent to the date upon which Bryan demanded and obtained his deed that had been left in their hands. All the allegations of the bill charging fraud are denied in general terms. And it also denies that they gave Bryan to understand that the money they paid him on the 29th of March, at the time of Boswell's purchase for himself, was for complainant's benefit; and it also denies that they obtained from Bryan a deed in blank to be used only in case complainant did not return to Kissimmee within thirty days. And it is averred that Boswell made no effort to purchase the land for himself until after Bryan had declared the sale rescinded and had told defendants he intended to sell to another party. The defendant Bryan filed an unverified answer in which he adopted as his own the answer put in by the defendants Boswell & Rose. The defendant Rosa A. Rose, though regularly served with process of subpœna, did not answer at all. The cause was referred to a master to take testimony, and upon the reporting of the evidence taken by the master, upon final hearing, the court rendered a final decree in the

cause requiring the defendants, Boswell & Rose, and Rosa A. Rose to convey to the complainant all of the lot in controversy which they had not already disposed of, upon her paying to them the sum of $1,950 shown by the proofs to have been the amount at which Bryan sold said lot to Boswell, and requiring the defendants Boswell & Rose and Rosa A. Rose to account for and pay to the complainant the amounts received by them for various parcels of the lot sold and conveyed by them. A supplemental decree was also rendered authorizing a master to convey to the complainant the unsold portions of the lot that remained in the defendant's hands. From these decrees the defendants appeal to this court.

That the defendants, Boswell & Rose, were in the employ of the complainant, Mrs. Cunningham, as her agents for the purchase of the property in controversy, there is no dispute. That one of them, before notifying her of any intention upon *their part* to terminate such agency, and without her consent, purchased the property in his own name that they were employed to buy for her, and used $100 of *her money* in paying for same, there is also no dispute. These facts being admitted, the law applicable to them is well-settled, and sustains the decree appealed from. Where the relation of principal and agent exists, the utmost good faith is exacted in all of the transactions of the agent towards his principal in all matters connected with the subject of the employment. And where an agent is employed to make a purchase of land, the principal is entitled to all the skill, ability and industry of such agent to make the purchase on the best terms that can be had, and is entitled to the property at the price which the agent pays. And the agent is not permitted, without the assent of the prin-

cipal, to acquire an interest in the subject-matter of the agency, adverse to that of his principal. The agent, during the continuation of the agency, can not put himself in a position adverse to that of his principal; and where the agent, employed to purchase for his principal, purchases for himself, all the profits and advantages gained in the transaction belong to the principal, and the agent will be held to have taken the property as trustee for his principal. Such a trust comes within the exception provided for in our statute of frauds: section 2, p. 214 McClellan's Digest (sec. 1951, Rev. Stat.), as it arises out of the construction and operation of law, and may be established by parol. In the case of Rose vs. Hayden, 35 Kansas, 106, where the principles announced above were carefully considered and the authorities exhaustively reviewed by Justice Valentine, delivering the opinion for the court, it was held, that where a person employs a firm of land agents by parol to negotiate for the purchase of land for him, and the member of the firm who does the business commences such negotiations, but finally, and in violation of his duties as agent, purchases the property for himself, with his own money, and takes the title thereto in his own name; and afterwards the principal tenders to the agent an amount of money equal to the purchase money, and an additional amount sufficient to compensate the agent for all his services, and demands of the agent that he shall execute a deed to him of the property, but the agent refuses, and claims to own the land himself, that under these facts, and by operation of law, the agent holds the legal title to the land in trust for his principal. The general principles announced will be found to be sustained by the following authorities: Cotton vs. Holliday, 59 Ill., 176; McMurray vs. Mobley, 39 Ark.,

309; Firestone vs. Firestone, 49 Ala., 128; Wellford vs. Chancellor, 5 Gratt. (Va.), 39; Wolford vs. Herrington, 74 Pa. St., 311; Church vs. Sterling, 16 Conn., 388; Switzer vs. Skiles. 44 Am. Dec., 723, (3 Gilman, 529); Reed vs. Warner, 5 Paige's Chy., 650; Lees vs. Nuttall, 5 Eng. Chy. (1 Russ. & Mylne), 54; Sweet vs. Jacocks, 6 Paige's Chy., 355; Benson vs. Heathorn, 20 Eng. Chy. (1 Young & Collyer), 325; Jenkins vs. Eldridge, 3 Story, 181; Taylor vs. Salmon, 18 Eng. Chy. (4 Mylne & Craig), 133; 1 Am. & Eng. Ency. of Law, 378 *et seq.*

In this case it is admitted that the complainant employed Boswell & Rose as her agents to buy the land in controversy. That they did purchase it for her benefit on the 19th of March, 1886. That she paid them $100 of the purchase money. That she left immediately for Cincinnati, with their knowledge, for the express purpose of obtaining the balance of the purchase money from sources which they had knowledge of. That as soon as she arrived in Cincinnati, on the 27th of March, two days prior to their purchase for themselves, she notified them by telegram of having there obtained the requisite money, and demanded of them an abstract of the title which they promised to supply. While she was absent, on the 29th of March, only ten days after she thought she had secured the property, and while she was going to great trouble and expense to make good her purchase, the defendant, Boswell, purchases the property, taking the title to himself and uses her $100 payment in making such purchase. It is also proven and admitted that upon her return to Kissimmee on or about April 12th, 1886, she was then informed for the first time that her agent Boswell had purchased the property for himself. It

is also admitted that she at once made a tender to them of the sum of $2,050, that, added to the $100 already paid by her, was the amount she had agreed to pay for the property, besides $10 to cover any expense and interest on the amount paid out by them. The proof shows that she has acted promptly throughout and in all good faith. The defendants, Boswell & Rose, refused her tender of the agreed price and persisted in keeping and claiming the property as their own. In their letter to her, written on the 29th of March, the day Boswell purchased the property, they fail to give any hint to her that they, *her agents,* had purchased the property, and they fail also to state that they had bought it at considerably less than the price she was to pay. There is no pretence even that they had severed their relation towards the complainant as her agents before they dealt for the property for their own benefit; nor is there any pretence that their purchase for themselves was done *with her sanction or consent.* Under these circumstances, and under the well settled principles of law above announced, they were properly held to have taken the property in trust for her benefit. And the decree was proper also in requiring her to pay only the amount that they had paid for the property, and in requiring them to account for and render to her the sums for which they had sold portions of the property. It is contended that the decree was erroneous because it requires the defendant Boswell to account for and pay over to the complainant profits that were made by the defendant Rosa A Rose from sales of portions of the property disposed of by her. The bill charges that the conveyance to one-half of the property made by Boswell to Rosa A. Rose on the same day or the next day after the conveyance by Bryan to

him, and, as it turns out in the proofs, for just one-half of the consideration paid to Bryan for the whole, was made for the purpose of furthering the fraud upon complainant; that said conveyance was a mere pretence, and was made for the benefit of A. J. Rose, the husband of Rosa A. Rose, who, as Boswell's partner, was also the complainant's agent. Rosa A. Rose fails entirely to answer the bill; and her husband, A. J. Rose, when testifying as a witness in the cause, admitted that she obtained the money *from her husband* to buy her interest in the property. From these circumstances we think the court below was justified in dealing with Rosa A. Rose's connection with the matter just as though her husband alone, as Boswell's partner, were the real actor in her stead. We are much impressed from the proofs in the case, that the actions of the defendants, Boswell & Rose, through out the entire transaction were not what they should have been from the standpoint of good faith, and that in taking the title to Boswell, at the time and under the circumstances disclosed in the proofs, was a fraud upon the complainant, not only in law, but in fact.

The decrees appealed from are affirmed.