P. F. Connelly, trading as P. F. Connelly Paving Company, *Appellant*, v. The Special Road & Bridge District No. 5, et al., *Appellees*.

En Banc.

Opinion filed March 5, 1930.

*Hampton & Bull,* for Appellant;

*Charles F. Blake,* for Appellees.

458

DAVIS, Commissioner:

The appellant filed his bill in the Circuit Court of Hillsborough County, wherein it was alleged in substance that on the 4th day of February, 1927, Special Road and Bridge District No. 5, by and through the chairman of the Board of County Commissioners, entered into fourteen contracts for the construction of paved roads in said district; that after the letting of said contracts, complainant had a series of negotiations during the months of April, May and June, 1927, conducted in part through the defendant, J. W. Cooper, who was a trusted employee of complainant, and engaged in transacting business as general superintendent and later as assistant superintendent; that complainant was then engaged in other work in the State of Arkansas, and left with and trusted to the said Cooper and to one Walter Warntjers, another employee, the matter of securing other contracts for work, and instructed particularly to the said Cooper and the said Warntjers the matter of securing from Smith Bros. Construction Company a sub-contract upon the said roads ''for double surface treatment and covering asphalt with slag and spotting slag'' upon each of said roads; that Cooper with the fraudulent design of benefiting himself, and in bad faith towards complainant, at a time when he was in the employ of complainant, in his name and for his own use and benefit fraudulently entered into sub-contracts with said Smith Brothers Construction Company, for sweeping and covering the asphalt with slag, at and for the price of four cents per square yard;'' that Smith Brothers Construction Company knew of Cooper's employment; that complainant did not learn of the existence of the Cooper contract until after said work was completed and complainant was in Florida inspecting other work; that approximately a certain stated amount had been paid to

Cooper on said contract, and that was in a safety deposit box in Tampa in the name of Mrs. J. W. Cooper, wife of the said J. W. Cooper; that other sums had been advanced upon said contracts "for monthly estimates," the exact amount being unknown to complainant, but that final payment had not been made to Cooper, and that any sum then due Cooper for work called for by his sub-contract "is the property of and belongs to" complainant. The bill contains a prayer for an accounting, and that all sums which may be due Cooper by reason of the sub-contract be deemed to be the property of and paid to complainant, except the sum of $1,300.00, which Cooper was entitled to as salary during the period of performance of the contract, and for general relief. On the 25th day of January, the court made an order reciting that the defendants, J. W. Cooper, Smith Brothers Construction Company, Special Road and Bridge District No. 5, and the county commissioners had appeared before the court by counsel, the said Cooper being present in court and the complainant being represented by counsel, and that the parties having entered into an agreement before the court. "That when the said Special Road and Bridge District Number Five and the said county commissioners have ascertained the amount due to Smith Brothers Construction Company for the work of sweeping and covering the asphalt with slag, as described in the bill of complaint in this cause, that the amount so found to be due shall be paid to the Citizens Bank & Trust Company, a corporation, of Tampa, Florida, to be held by said bank until final decree is secured in this cause," and it was so ordered, and it was further ordered that the said defendants be and they and each of them were thereby restrained and enjoined from removing or withdrawing the said sum so ascertained until the further order of the court.

Smith Brothers Construction Company answered the bill, but inasmuch as the bill of complaint was afterwards, on motion of complainant, dismissed without prejudice as to it and the injunction theretofore granted was dissolved as to said Smith Brothers Construction Company, it is not necessary to recite the contents of such answer.

The defendants, J. W. Cooper and his wife, answered, admitting that no final payment had been made to Cooper, as sub-contractor by Smith Brothers Construction Company, the general contractor, denying certain allegations and demanding strict proof of still other material allegations of the bill that were neither admitted nor denied. These defendants further answering said that at the time of the making of the contract between J. W. Cooper, and Smith Brothers Construction Company, on the 10th of June, 1927, Cooper had quit the employ of complainant and entered into business for himself as an independent contractor and secured the contract with full knowledge on the part of the complainant; that he notified complainant by telegram at his office in Little Rock of *his intention,* and that complainant notified him "if he attempted to secure said contract, he could not longer remain on the payroll of the complainant;" that complainant was fully informed of the making of the said contract for the reason that complainant was a competitive bidder; that neither complainant nor he (Cooper) was awarded the sub-contract upon their competitive bids, but that complainant was awarded a sub-contract on the work for spreading the asphalt on the roads; that Smith Brothers Construction Company commenced the work of sweeping and covering the asphalt with slag with its own men but afterwards, on the 10th of June, through its superintenent, F. D. McGinnis, entered into the said contract with said defendant to do that work.

The defendant, Furr, also answered the bill. Further than stating that he claimed one-half of the profits arising from the contract between Cooper and Smith Brothers Construction Company, by reason of a partnership agreement between Cooper and himself, it is unnecessary to refer to his answer.

On the third of February, an agreement was entered into by all of the parties that Smith Brothers Construction Company was due under the contract with Cooper the sum of $14,079.62; that the special road and bridge district and the county commissioners pay to Smith Brothers Construction Company all monies due and owing or thereafter to become due and owing it on account of the work done on the roads in said district, and that said district and the county commissioners stand released and discharged of and from any and all further liability; that the said sum of $14,079.62 be deposited by Smith Brothers Construction Company with Citizens Bank & Trust Company of Tampa, to be held in a special account in escrow, subject to the further orders and decrees of the court, and that upon such deposit being made, Smith Brothers Construction Company stand released and discharged from any and all further liability and that the said temporary restraining order be modified to conform to the agreement.

A decree *pro confesso* was entered against the special road and bridge district and the county commissioners.

The cause was referred to a special master to take the testimony, and afterwards upon hearing the court made a decree dismissing the bill of complaint, and dissolving the injunction in so far as it affected the moneys in the bank as related to this litigation. From this decree the complainant appealed to this Court.

The record of the testimony is rather voluminous and from a practical standpoint it is inexpedient to do more

than state our conclusions as to what the evidence has established, with brief references to certain statements made by witnesses or to documentary proof adduced at the hearing.

We deem it established that J. W. Cooper for a number of years prior to June 10, 1927, had been employed by appellant, P. F. Connelly, who was a resident of Arkansas and remained out of Florida, except when here on business. It was by reason of that employment that Cooper came to Florida and after coming here he acted as superintendent for Connelly on certain road work which Connelly had contracted to do. As such superintendent, he had the right to hire and discharge minor employees, pay them for their services, carry a bank account so that he could check out funds of Connelly in local banks and generally to look after the business of his employer in certain localities in Florida, and that at least on one occasion, he took on a small contract for his employer for road work. For quite a while, however, prior to the month of June, 1927, Connelly had another employee—a nephew—one Warntjers, who acted as his superintendent on other work which Connelly had in Florida, and who perhaps had more power in the management of Connelly's business in this State than had Cooper; that 14 contracts for road work in Road and Bridge District Number 5, Hillsborough County, had been let to Smith Brothers Construction Company, a corporation, for the building of 14 roads in that district. When these contracts were let, the appellant, Connelly, began negotiating with Smith Brothers Construction Company for a sub-contract with it for this work, and he had some reason to believe that he would get the work. However, he was referred by the officers of the corporation to their superintendent, one McGinnis, and as a result of negotiations with McGinnis, he secured a contract for put-

ting on tarvia and asphalt upon the said roads which appellant says, in effect, he took at a low price with the hope of getting other kinds of work that was necessary to be done on the said roads at a figure that would enable him to make some money.

On May 20th, Cooper wired Connelly at Little Rock, as follows:

"Would you care if I take contract spreading slag for Smith Brothers wire at once Dade City."

Connelly replied thereto on the same day as follows:

"Our contract with Smith is that I am to give him prices for spreading slag and I advise you to keep off it as you cannot do that and work for the Connelly Paving Company too meantime wire me what price you thought you could do it for."

On the next day, the 21st, Connelly dispatched the following telegram to Cooper:

"Find out what McGinnis will give you for sweeping and spreading slag and let me know at once."

And to this telegram Cooper replied on the same day as follows:

"McInnis said you didn't act as you wanted the sweeping and spreading and as sweeping for prime will have to start at once someone will have to do it and I thought I could put a foreman on it or do it myself as your conversation at Bay View you couldn't keep two men on job at price you were paying us only for a short time and thought I could do it for 5 cents."

There is no evidence of any further communications between them with reference to this matter until June 13, 1927, when Cooper sent the following telegram to Connelly:

"I have taken job spreading slag Smith Bros. Walter has man on job at Chiefland I am up here breaking him in hope he will have better success than I did best regards."

These telegrams do not indicate an intention on the part of Cooper to make a contract with Smith Brothers Construction Company until the third day after the contract was made and then he did not advise Connelly that he had made a *contract*, but that he had "taken job spreading slag."

On the 9th day of June, Cooper went to Tampa and on the next day entered into a contract with McGinnis, the superintendent of Smith Brothers Construction Company, for the sweeping of and spreading slag upon, the said roads. Cooper put in a bill for and was paid by Connelly (though several months afterwards) his regular wages until June 15, 1927.

Cooper testified that he went to Warntjers on June 9th and told him that he had quit his job, so that he could go and take contract. Warntjers denied that Cooper told him this and said he was not advised until Sunday, June 12th, and then did not know that Cooper had made a contract to do the work; that he was not Cooper's superior. Cooper further testified that he had not had any conversation with McGinnis with reference to the subject matter of his contract until June 10, while McGinnis testified that Cooper began negotiations with him about June 1. One of the telegrams hereinabove quoted shows that he was in communication with McGinnis as early as May 21st.

Warntjers, on June 9th, submitted on behalf of Connelly, to McGinnis a bid which covered the sweeping of the road and spreading of slag and also the work that Connelly was already under contract to do, but there is no evidence in the record to show that a bid was submitted by him for the appellant to cover only the sweeping and spreading of slag.

With reference to his negotiations with Cooper, the witness, McGinnis, said: "I don't think I told Cooper what Connelly's bid was."

Cooper received from Connelly as wages the sum of $200.00 per month.

This Court has said that a contract for an employment for an indefinite term may in the United States, be terminated at the will of either party. So. Exp. Co. v. Stovall, 71 Fla. 122, 70 So. R. 939.

In the absence of special circumstances deemed sufficient to control the matter, a number of the highest courts of states in this country have held that a hiring at a named price per week, month or year, is a definite hiring for the period named. However, quite as many courts of equal dignity have held the contrary. For exhaustive notes giving citations on each side of the question, see 11 A. L. R. 469; Ann. Cas. 1913 D. 218. See also, 18 R. C. L. 508, 39 C. J. 71.

The facts in the case before us show clearly that Cooper sustained a fiduciary or confidential relation to his employer, Connelly, so long as the relation of employer and employee continued.

We are now confronted with the question: Can Cooper, while in the employment of Connelly, with full knowledge that his employer wanted a contract with Smith Brothers Construction Company for certain work, secretly negotiate with this company for such work for his own benefit,

determine in his own mind, and without notifying his employer of his intention to quit his employment on the eve of making a contract with this company, though still drawing his wages, enjoy the profits or earnings made by reason of such contract?

We have not been cited to a case in which the facts are similar to the facts of this case. We have made diligent search for some authority in point to guide us, but have not succeeded in finding one.

For authority to sustain a decision we must, therefore, look to other sources.

Mr. Mechem in his work on Agency says:

"The agent may not deal in the business of his agency for his own benefit. His duty to his principal requires that his efforts shall be in the behalf and for the benefit of his principal. He cannot perform this duty if he is constantly attempting to use his agency for his own purpose." 1 Mechem, Agency 869.

The authorities generally sustain that statement. Switzer v. Skiles, 3 Gilman (Ill.) 529, 44 Am. Dec. 723; Bunker v. Miles, 30 Me. 431, 50 Am. Dec. 632; Miller v. Davidson, 3 Gilman (Ill.), 518, 44 Am. Dec. 715.

"The general rule is that a servant is chargeable as for a breach of duty, if, without the knowledge and consent of his master, he engages in a transaction which tends to bring his personal interest into conflict with his obligations as a fiduciary agent. This rule has been applied  *  *  *  (5) Where he derives profits from transactions which operate directly to the prejudice of his master's business." 1 Labatt's Master and Servant, 2d ed. 866.

"A servant who, without his master's knowledge and sanction, procures from a transaction in which he is acting as his master's agent a personal advantage not provided for, nor contemplated by, the contract of hiring, is guilty of a breach of duty." 5 Labatt's Master and Servant, 2d ed. 6338.

It seems to be clear that an employee is bound to the exercise of the utmost good faith towards his employer, and cannot without the latter's consent retain profits or earnings received in the course of the performance of the employer's business or in an undertaking which constitutes a breach of duty to the employer. Boswell v. Cunningham, 32 Fla. 277, 13 So. R. 354; Quinn v. Phipps, 93 Fla. 805, 113 So. R. 419, 54 A. L. R. 1173; Grantham v. Brightwell 96 Fla. 366, 117 So. R. 885; Note 13, A. L. R. 907; 1 Mechem on Agency, 869, 895.

It also seems to be the general rule that a servant, after his term of service has expired, is entitled to compete in business with his master on the same footing as a stranger, with the qualification that the servant is precluded from using for his own advantage information or material acquired by him in the course of his employment. 1 Labatt's Master and Servant, 940.

In Thompson v. Havelock, 1 Campbell, 527, Lord Ellenborough, in holding that a ship captain who had entered into an agreement to let his ship at a stipulated sum per ton per month for its owner could not in action against the owner recover an agreed sum per ton per month for his personal exertions, all having been received by the owner, said: "No man should be allowed to have an interest against his duty."

In Michigan Crown Fender Co. v. Welch, 178 N. W. 684, 13 A. L. R. 896, text 902, the Court in referring to the duty

of an agent who when purchasing supplies for his principal purchased an additional amount on his own account which he sold at a profit, said, among other things:

"It was his duty to communicate to his principal facts relating to the business, which ought in good faith to be made known to the latter,"

and the opinion quotes the following from Mechem on Agency, 2nd ed., Sec. 1224, as follows:

"The well-settled and salutary principle that a person who undertakes to act for another shall not, in the same matter, act for himself, results also in the other rule that all profits made and advantage gained by the agent in the execution of the agency belong to the principal. And it matters not whether such profit or advantage be the result of the performance or of the violation of the duty of the agent, if it be the fruit of the agency."

For cases relating to the question under discussion see notes 13 A. L. R. 924; 5 L. R. A. (N. S.) 1172.

For a case somewhat analogous to the one at bar, we are cited by appellant to Trice v. Comstock, 121 Fed. R. 620, 61 L. R. A. 176, where Judge Sanborn speaking for the U. S. Circuit Court of Appeals, 8th circuit, said:

"For reasons of public policy, founded in a profound knowledge of the human intellect and of the motives that inspire the actions of men, the law peremptorily forbids every one who, in a fiduciary relation, has acquired information concerning or interest in the business or property of his correlate from using that knowledge or interest to prevent the latter from accomplishing the purpose of the relation. If one

ignores or violates this prohibition, the law charges the interest or the property which he acquires in this way with a trust for the benefit of the other party to the relation, at the option of the latter, while it denies to the former all commission or compensation for his services. This inexorable principle of the law is not based upon, nor conditioned by, the respective interests or powers of the parties to the relation, the time when that relation commences or terminates, or the injury or damage which the betrayal of the confidence given entails. It rests upon a broader foundation, upon that sagacious public policy which, for the purpose of removing all temptation, removes all possibility that a trustee may derive profit from the subject-matter of his trust, so that one whose confidence has been betrayed may enforce the trust which arises under this rule of law although he has sustained no damage, although the confidential relation has terminated before the trust was betrayed, although he had no legal or equitable interest in the property, and although his correlate who acquired it had no joint interest in or discretionary power over it. The only indispensible element of a good cause of action to enforce such a trust are the fiduciary relation and the use by one of the parties to it of the knowledge or the interest he acquired through it to prevent the other from accomplishing the purpose of the relation.''

In the case of Boswell v. Cunningham, 32 Fla. 277, 13 So. R. 354, a firm of real estate agents was employed by Mrs. Cunningham as her agents to purchase certain real estate for her. Instead of purchasing the land for their client, one of them purchased it for himself and then conveyed one-half of it to the wife of the other member of the firm. The client, Mrs. Cunningham, then instituted

a suit asking for a conveyance and release to her of all interests her agents had acquired in the land. A decree was rendered in her favor, and upon appeal this Court, in affirming the decree of the lower court used this signicant language:

"That one of them (the agents), before notifying her (complainant) of any intention upon *their part* to terminate such agency, and without her consent, purchased the property in his own name that they were employed to buy for her, and used $100 of *her money* in paying for the same, there is also no dispute. These facts being admitted, the law applicable to them is well-settled, and sustains the decree appealed from."

And the Court in support of its conclusions proceeded to state that where the relation of principal and agent exists, in all matters in connection with the subject of the employment the utmost good faith was exacted of the agent, that the agent, during the continuation of the agency, cannot put himself in a position adverse to that of his principal, and that where employed to purchase for principal he purchased for himself, all the profits and advantages gained in the transaction belong to the principal.

In the case just cited, the agents or one of them, *without notifying* their principal of their intention to terminate the agency and *without her consent,* for an agreed price acquired land. In the case before us, the agent *without notifying* his principal of his *intention* to quit, and without his consent, for his (the agent's) promise to work, acquired a promise from Smith Brothers Construction Company to pay him (the agent) for the work. The agent in both cases acquired property rights; in one case land, and in the other a chose in action. 22 R. C. L. 43, 66.

It is said by solicitors for appellee that all the authorities they had been able to find hold "that the relation of principal and agent must exist while the work is being conducted before the principal can claim the profit of the agent's efforts outside of his employment." This statement is too broad. In the case of Trice v. Comstock, *supra,* it was interposed as defensive matter to the suit, that the agency had terminated before the confidence was violated, and the court in referring thereto said:

"The duty of an attorney to be true to his client, or of an agent to be faithful to his principal, does not cease when the employment ends, and it cannot be renounced at will by the termination of the relation. It is as sacred and inviolable after as before the expiration of its term."

See Carson v. Fogg, 34 Wash. 448, text 452, 76 Pac. R. 112; 1 Mechem on Agency, 2nd ed., 886.

We are constrained to hold that when Cooper entered into contractual relations with the Smith Brothers Construction Company, he was in relation to the subject-matter of the contract bound by the same duty to Connelly that devolved upon him prior to June 9th; that he acquired an interest that conflicted with that duty, and such interest was adverse to the interest of his employer, and even though the relation of employer and employee might have been terminated such an undertaking was not within the sphere of legitimate competition. He procured a contract for himself that might have just as easily been procured for his employer. To hold otherwise, we would provide a strong incentive to confidential employees to break faith with, and engage in lines of business in competition with their employers.

It is insisted by Cooper and wife that the record discloses that Cooper did nothing while in the employ of Connelly, except to make plans for future employment after he had quit such service. It is our opinion that the principle invoked does not apply to this case.

It is also contended that because of Connelly's acquiescence, he is estopped from claiming any part of the earnings resulting from the contract.

We recognize the rule that when a party, with full knowledge or with sufficient notice or means of knowledge, of his rights and all of the material facts, remains inactive for a considerable time so that another party is induced to suppose that a transaction in which he, such other party, is interested is recognized, will be estopped from asserting any rights he may have had.

The burden of proving estoppel rests upon the party invoking it. Horton v. Smith-Richardson Inv. Co., 81 Fla. 255, 87 So. R. 905; Erwin v. Dekle, 60 Fla. 56, 53 So. R. 441.

The telegram of June 21 from Cooper advising Connelly that he had "taken job spreading slag" was not notice to the latter that the former had made a *contract* with Smith Brothers Construction Company. There was no other evidence adduced that tended to charge Connelly with personal knowledge of such contract, and he himself testified that he did not know of the contract until after he came to Florida, just prior to filing the bill of complaint in this case, when the work was completed.

If we concede that this telegram was sufficient to cause the average person to suspect that a contract had been made, notwithstanding this, we would have to agree with Mr. Justice Clifford, when he stated in Goodman v. Simonds, 61 U. S. 343, 15 L. Ed. 934, text 940.

"There is a wide difference between suspicion and knowledge in respect to the subject-matter under consideration."

Then, too, Cooper had been a trusted employee of Connelly for several years, and it isn't likely that he would have believed that Cooper had betrayed the confidence reposed in him.

However, Cooper testified that he had told Warntjers of the said contract, and one L. D. Moorman testified that Warntjers told him on the 12th of June that Cooper had a contract of his own, but this witness modified this statement on his cross-examination when he said he could not be positive "whether he said contract or whether he said some work of his."

Warntjers testified that the first time he had any knowledge of the contract was the day before the trial of the cause; that he did not know whether Cooper was working by the day or how it was. He also said he had no authority to inquire into Cooper's contract.

The rule that imputes to the principal the knowledge possessed or notice received by the agent applies only to cases where the knowledge is possessed or the notice received by the agent within the scope of his authority. 2 Mechem on Agency, 2d Ed. 1415.

If it can be said that Warntjers had knowledge of the contract between Cooper and Smith Brothers Construction Company from about the time it was made, the evidence is insufficient to show that his authority as agent was broad enough to impute to his principal, Connelly, the knowledge that he, Warntjers, possessed.

The case is reversed and remanded with directions that the lower court cause an accounting to be had to ascertain the net profit earned under the contract between the Smith Brothers Construction Company and J. W. Cooper;

that it deduct therefrom the value of Cooper's services from June 15th, 1927, to the completion of the contract, and that it then make and enter a decree conforming to the views expressed in this opinion.

Reversed with directions.

PER CURIAM.—The record in this cause having been considered by the Court, and the foregoing opinion prepared under Chapter 14553, Acts of 1929, adopted by the Court as its opinion, it is considered, ordered and decreed by the Court that the decree of the court below be and the same is hereby reversed and the cause remanded with directions that the lower court cause an accounting to be had to ascertain the net profit earned under the contract between the Smith Brothers Construction Company and J. W. Cooper; that it deduct therefrom the value of Cooper's services from June 15th, 1927, to the completion of the contract and that it then make and enter a decree conforming to the views expressed in this opinion of the Supreme Court.

TERRELL, C. J., AND WHITFIELD, STRUM, AND BROWN, J. J., concur.

ELLIS AND BUFORD, J. J., dissent.