440 So.2d 1292 (1983)
PHILLIPS CHEMICAL COMPANY, a Foreign Corporation, a Division of Phillips Petroleum Company, a Foreign Corporation, Appellant,
v.
Maurice MORGAN, Kenneth R. Gamble, and Gam-Co Corporation, a Florida Corporation, Appellees.
No. 82-2489.
District Court of Appeal of Florida, Third District.
October 4, 1983.
Rehearing Denied November 8, 1983.
*1293 McCune, Hiaasen, Crum, Ferris & Gardner, and Davis W. Duke, Jr. and J. Clifton Cox, Fort Lauderdale; Stewart R. Werner, Oklahoma City, Okl., for appellant.
Watson, Hubert & Clark and Henry B. Carpenter, Fort Lauderdale, James B. Matthews, Miami, for appellees.
Before SCHWARTZ, C.J., and HUBBART and FERGUSON, JJ.
SCHWARTZ, Chief Judge.
We are concerned with the legal consequences of a flagrant case of commercial bribery involving kick-backs to an employee of half of the profits realized from transactions he secretly effected between his principal and a co-participant in the scheme. In reversing the judgment below, we hold that both the employee and the third party are liable to the employer for the profits "earned" through the arrangement, and that the co-conspirator is barred from recovering for goods sold and delivered to the employer pursuant to that design.
The record below demonstrates without evidentiary dispute that in 1980, Maurice M. Morgan, who had been employed by Phillips Chemical Company for twenty seven years, and Ken Gamble entered into an arrangement under which Morgan, whose duties included the brokerage of these materials for Phillips, set up Gamble's corporation, Gam-Co Corp.,[1] as a middleman to buy from or sell various chemical products to his employer. In return, Gamble agreed to and did remit to Morgan's shell, known as the "Century Company," fifty per cent of the profits earned either on a sale to Phillips or upon the resale to others of the materials Gam-Co had purchased.
This arrangement was of course kept secret from Phillips with the knowledge and assent of both parties. Thus, Gamble specifically stated that he had done so, supposedly in respect to Morgan's wishes, in order not "to cause problems for him with Phillips." Morgan in turn also explicitly acknowledged that otherwise self-evident fact.[2] As a result of ten separate completed *1294 transactions between Gam-Co and Phillips thus effected by Morgan in the period of February-September, 1980, Gam-Co "earned" profits of $65,372.56, and  true to Gamble's word  paid half of that, $32,686.28,[3] to Morgan. Over the Labor Day holiday, however, Morgan's supervisor received an anonymous tip about Morgan's conduct. After an investigation confirmed the truth of the report, Morgan was fired and Phillips terminated all further dealings with Gam-Co and Gamble.
That decision left unpaid a shipment of sulfuric acid which Gam-Co had delivered to Phillips for a previously agreed price of $67,440.14. The present action commenced with Gam-Co suing Phillips for that amount in the Dade County Circuit Court. Phillips raised illegality as a complete or, to the extent of the kick-back, a partial defense to the claim on the ground, as was uncontradictedly established below, that the agreement had been effected by Morgan in the course of the illegal scheme: he was to be given $2,932 of a $5,864 profit to Gam-Co  which represented the portion of the $67,440.14 price above the $61,576.14 Gam-Co had itself paid for the material. Phillips also counterclaimed against Gam-Co, and brought a third-party action against Gamble individually for the gross profits in the Phillips deals they had divided with Morgan. Morgan was also named as a third-party defendant to recover the kick-backs he had been paid.
Although there was no evidence at the trial to the contrary of the facts which have been outlined,[4] the jury returned verdicts entirely against Phillips and the trial judge accordingly entered judgments against Phillips on its affirmative claims and for $67,440.14 in Gam-Co's favor. We reverse each of these judgments upon the conclusion that Phillips' timely motions for directed verdict in its favor as to all the claims should have been granted in their entirety.
1. The kick-backs. There was an entirely undisputed showing below that the transactions contrived by Morgan with Gamble and Gam-Co were in blatant disregard of the most elemental fiduciary duties owed an employer not to deal in his business for the agent's own benefit. Connelly v. Special Road & Bridge Dist. No. 5, 99 Fla. 456, 126 So. 794, 797 (1930); Vining v. Smith, 343 So.2d 871 (Fla. 3d DCA 1977), cert. denied, 355 So.2d 518 (Fla. 1978). It is also plain that Gamble and Gam-Co were well aware of that breach. Under these circumstances, both the unfaithful employee, Morgan, and the participating third-parties, Gamble and Gam-Co, are clearly liable as a matter of well-established law for the amounts improperly received by Morgan in undisclosed compensation, $32,686.28. Martin Co. v. Commercial Chemists, Inc., 213 So.2d 477 (Fla. 4th DCA 1968), cert. denied, 225 So.2d 523 (Fla. 1969);[5]ITT Community Development Corp. v. Barton, 457 F. Supp. 224 (M.D.Fla. 1978); Excel Handbag Co. v. Edison Brothers Stores, Inc., 630 F.2d 379 (5th Cir.1980); 3 C.J.S. Agency § 456 (1973).
The appellees' single response to the application of this undeniable principle is that Phillips did not show that it had suffered an out-of-pocket loss in the amount of the kick-backs. Since the amounts given to an unfaithful employee could and should have been paid his employer, we disagree with this claim as a matter of fact, but the contention is in any case totally without *1295 legal foundation. As the court said in Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509 (1942), which was adopted and followed in Martin Co.,
It is beside the point for either Turner [the employee] or Corbett [the payor] to say that Kinzbach [the employer] suffered no damages because it received full value for what it has paid and agreed to pay. A fiduciary cannot say to the one to whom he bears such relationship: You have sustained no loss by my misconduct in receiving a commission from a party opposite to you, and therefore you are without remedy. It would be a dangerous precedent for us to say that unless some affirmative loss can be shown, the person who has violated his fiduciary relationship with another may hold on to any secret gain or benefit he may have thereby acquired.
160 S.W.2d at 514.
2. The "profits" of Gamble and Gam-Co. Although the law on the question is not nearly so unequivocally established as on the "kick-back" issue, we also agree with Phillips that it is entitled to recover from them the fifty per cent, $32,686.28, share of the ill-gotten profits in the transactions retained by Gamble and Gam-Co.[6] The general rule as to the remedies available in a situation like this is stated as follows in comment d, Restatement of Agency (Second) § 312 (1958):
A person who intentionally causes a servant or other agent to violate a duty to the principal is subject to liability in tort for the harm he has caused the principal or in a restitutional action for any profit he derived from the transaction.
It is clear that the $32,686.28 which Gamble and Gam-Co kept as their profits of the nefarious scheme plainly is just the "profit derived from the transactions" which is recoverable under this formulation. See also, Martin Co., supra, at 480 (stating that undifferentiated "secret profits" may be recovered).
Moreover, an analysis of the transaction shows that the sum also represents the amount of the "harm he [Gamble and Gam-Co] caused the principal [Phillips]" for which they are liable on this alternative basis as well. It must be remembered that Gam-Co was inserted by Morgan into each of the transactions as an interloper between Phillips and the original seller or eventual purchaser of the product involved in the particular contract  apparently solely in order to make a profit which could be divided with him. Gam-Co's thus-economically purposeless activities cannot be deemed to have affected in any way the value of those materials, and Phillips, in turn, must be regarded as having been able, but for the wrongdoing, itself to have purchased and sold the chemicals at the respective prices they were purchased and sold by Gam-Co. In other words, Phillips suffered losses and was "harmed" to the exact extent of Gam-Co's gross profits. Illustration 1 to Restatement of Agency (Second) § 313 states:
P employs A to sell Blackacre for him. A tells T, a prospective purchaser, of this, and says that he will sell it to T at a low price if T will pay A a commission. T pays A a commission and thereby purchases Blackacre at a low price. Upon ascertaining the facts, the transaction can be rescinded by P or, at P's election, he can recover from T the difference between the value of Blackacre and the price received, or the amount of commission paid by T to A. [emphasis supplied]
As has been emphasized, the value of "Blackacre" is here the purchase or sales price of the goods themselves absent Gam-Co's rake-off. Phillips is therefore entitled to recover the difference between those figures and what it should and would have paid or received itself.
These considerations aside, we simply will not permit Gam-Co, in the most basic sense, to retain the fruits of its obvious wrong. See generally, United States v. Reece, 614 F.2d 1259 (10th Cir.1980). It must therefore *1296 disgorge those amounts to the entity it has defrauded.
3. The sales price of goods sold and delivered under the scheme. Finally, we determine that the scheme which gave rise to the contract constitutes a complete defense to Gam-Co's claim for the sulphuric acid which had been received by Phillips. As has already been emphasized, there can be no question that this state has put its face in unequivocal disapproval of the practices in which Gamble and Morgan so shamelessly engaged. Connelly, supra. It is clear also that, as a general rule, the courts will not encourage conduct which is thus-repugnant to public policy by serving as an instrument for the enforcement of any supposed right which arises from it. Frye v. Taylor, 263 So.2d 835 (Fla. 4th DCA 1972). In Excel Handbag Co. v. Edison Brothers Stores, Inc., supra, the Fifth Circuit, speaking through Judge Fay, stated that Florida would apply these principles to bar an action, like Gam-Co's, for goods sold and delivered. We confirm the accuracy of that prediction[7] and adopt the reasoning of that opinion.
The more difficult question is whether Florida law recognizes commercial bribery as a defense to payment for goods received and, assuming that it does, whether evidence of commercial bribery was produced in this case. The parties have not cited any Florida cases, nor has our independent research discovered any Florida cases, in which commercial bribery was specifically recognized as a defense to payment for goods received. Florida has not statutorily recognized such a defense. Florida has recognized fraud, both by statute and as a matter of common law. While we are reluctant to say how the Florida Supreme Court would resolve the question, we believe the public policy of that state regarding fraud in general suggests that commercial bribery would be recognized as a defense. We also believe that the Florida courts would define the elements of commercial bribery in the same manner as the district court did in this case, i.e., secret payments to an agent inducing the purchase of goods for the principal from the party making those payments.[16]
[16] Though Florida has not specifically recognized or defined commercial bribery, its statutory and case law involving contracts entered into by fraud is quite analogous to the situation presented here and is, therefore, indicative of the manner in which the Florida courts would resolve this issue. In a number of cases brought by purchasers to rescind a contract on the grounds that it was procured by fraud, the courts of Florida have required proof that the fraud was an inducing and material factor in the decision to enter into the contract. See, e.g., Storrs v. Storrs, 130 Fla. 711, 178 So. 841, 842-43 (1937); Nantell v. Lim-Wick Const. Co., 228 So.2d 634, 637 (Fla. 4th DCA 1970); Gammage v. Turner, 206 So.2d 252, 255 (Fla. 2d DCA 1968), cert. denied, 212 So.2d 870 (Fla. 1968). These decisions lead us to agree with the trial court's conclusion that in an action for fraud the courts of Florida would require evidence that the fraudulent act induced the formation of the contract. [emphasis supplied]
630 F.2d at 386. Unlike the facts in Excel,[8] it is undisputed that the kick-back arrangement by which Morgan was to benefit was the sole reason and "inducement" for Phillips' agreement to purchase the product from Gam-Co.[9] Thus, the doctrine is applicable as a matter of law to this case, and requires complete reversal[10] of the judgment *1297 in Gam-Co's favor. Like the court in the leading case of Sirkin v. Fourteenth Street Store, 124 App.Div. 384, 108 N.Y.S. 830 (1908),[11] which involved a situation and alleged facts identical to those conclusively established here, we do not agree that this result effects a hardship (and a benefit to the purchaser who need not pay anything for his goods) out of proportion to the miscreants' wrong. Indeed, considering the source, the courts of this state should not even listen to any such complaint.
For the foregoing reasons, the judgment in Gam-Co's favor is reversed and the cause is remanded with directions to vacate that judgment and to enter ones in favor of Phillips against Morgan, Gam-Co and Gamble for $32,686.28 plus interest and against Gam-Co and Gamble only for an additional $32,686.28 plus interest.
Reversed and remanded.
NOTES
[1] Gamble was the sole owner and sole employee of Gam-Co, which had been established in late 1979. Its only place of business was in his home in Dade County.
[2] The record shows Morgan received payments from Gam-Co despite having certified to Phillips that he was not accepting commissions, rebates, or other renumeration from those doing business with his employer. Morgan, who admitted that he had been convicted of a crime for his participation in the scheme, demonstrated at trial his concept of loyalty to his employer.

Q. You didn't get the best price, you just got a fair price and took a little bit for yourself, and that's fair in your mind?
A. I think it was fair, yes, sir.
[3] The checks were mailed to Morgan at his home in Bartlesville, Oklahoma. They were deposited in a bank in Tulsa, fifty miles away.
[4] The only "factual" contention made by the appellees is that Phillips became aware of and somehow condoned Morgan's dealings for its own commercial advantage. See Fisher v. Grady, 131 Fla. 1, 178 So. 852 (1937). A careful examination of the record shows no evidence whatever to support this assertion and uncontradicted testimony to the direct opposite.
[5] a third party (in this case Commercial Chemists) deals with another's agent (in this case Dobar) with knowledge that the agent is acting in violation of his fiduciary obligation to his principal (here Martin) the third party may be held jointly liable with the agent for secret profits.
213 So.2d at 480.
[6] We do not consider whether Morgan may also have been liable for that additional amount, since Phillips seems not to have made such a claim against him.
[7] When, as here, a federal judge's Erie speculation of what state courts would hold on a yet undetermined point of law is in fact adopted by state courts (largely because the views of an outstanding state practitioner like Judge Fay are themselves entitled to so much independent respect), that opinion constitutes the very epitome, perhaps a definition of a self-fulfilling prophecy.
[8] Compare also, e.g., Merchants' Line v. Baltimore & O.R. Co., 222 N.Y. 344, 118 N.E. 788 (1918).
[9] It was also shown that Morgan, "to make the transaction workable," personally lent $52,500 for Gam-Co to buy the sulfuric acid from its supplier Pasadena Chemical (who was also doing business directly with Phillips); the loan was to be repaid from the $67,000-odd collected from Phillips.
[10] Even if we had concluded that the commercial bribery was not a total defense, the judgment would, for the reasons previously stated, have been reduced by the $5,864 which represented Gam-Co's projected profit and Morgan's kick-back. Martin Co., supra.
[11] It should be noted however that Sirkin, which has been followed on numerous occasions since, e.g., Stone v. Freeman, 298 N.Y. 268, 82 N.E.2d 571 (1948), involved an "Anti-kickback" statute to which, as Excel expressly notes, Florida has no equivalent.