See also, 54 B.R. 292.

**In the Matter of HALLMARK BUILDERS, INC., Debtor.**

**HALLMARK BUILDERS, INC., Plaintiff,**

v.

**Terry CYPHER and Eastern Development Consolidated, Inc., Defendants.**

**Bankruptcy No. 84–551–ORL–BK–AP.**

United States Bankruptcy Court, M.D. Florida, Orlando Division.

Jan. 6, 1986.

Kevin Knight, for plaintiff.

William Harrell, Melbourne, Fla., for Eastern Development Consol.

James H. Harrison, Orlando, Fla., for Terry Cypher.

### FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

ALEXANDER L. PASKAY, Chief Judge.

THIS IS a Chapter 11 case and the matter under consideration is the assertion of several claims by Hallmark Builders, Inc. (Debtor) against Eastern Development Consolidated, Inc. (EDC) and Terry Cypher (Cypher). The claims are presented by the Debtor in a Complaint consisting of four Counts.

The claim in Count I is based on an alleged breach of an implied contract and set forth a right to a money judgment against the Defendant Cypher in the amount of $8,468.70. The claim in Count II is based on an alleged unfair competition by both Defendants. The claim in Count III is based on an alleged criminal conspiracy between the two Defendants and the claim in Count IV is based on an alleged tortious interference with a contractual relationship by both Defendants.

The relief which is sought by the Debtor in Counts II, III, and IV is a money judgment in an undetermined amount.

EDC, one of the Defendants named in this adversary proceeding, filed a petition for relief under Chapter 11 of the Bankruptcy Code after the commencement of this adversary proceeding. As a result, the Debtor consented to the dismissal of the Complaint against EDC without prejudice. This left for consideration the claims of the Debtor against the remaining Defendant, Cypher.

The facts germaine and relevant to the issues raised by the various claims set forth in the Complaint and by denial of all claims of the Debtor by Cypher as developed at the trial can be summarized as follows:

At the time relevant, the Debtor was engaged in building residential homes in Central Florida. It was building homes on lots owned by prospective purchasers of houses, basically according to two specifications and drawings of two models—one described as the Horizon and the other as the Gulfstream. Cypher, originally a resident of Pennsylvania, moved to Florida in April, 1981. In response to an ad placed by the Debtor in the local newspaper, he applied for the position of a sales manager and was hired by the Debtor, initially on the basis of a $200.00 per week draw against commission, but, later had his draw raised to $300.00 per week and, ultimately, to $400.00 per week in February of 1982.

While there is a dispute as to what the actual arrangement for compensating Cypher for his services was to be, this Court is satisfied that it was understood and Cypher knew that the draw he was to be paid had to be earned by commission on sales and if he earned in excess of the draw, he would receive the excess but if he failed to meet the draw, he would be in a negative position and would remain indebted to the Debtor to the extent of the shortfall.

It further appears that when Cypher was employed, he was given the Debtor's Personal Policy Manual (Debtor's Exh. # 3) and he signed an acknowledgement that he read and understood its provisions (Debtor's Exh. # 2). The Policy Manual provided, inter alia, several provisions concerning conflicts of interest, a provision for full disclosure of good faith, and a general prohibition against engaging in any activity which might be direct or indirect competition with the Debtor.

In July, 1982 Cypher, while still employed by the Debtor, met several times with one William Thomas, an old acquaintance and former business associate of his

while he lived in Pennsylvania. Thomas expressed an interest to start a construction business and introduced Cypher to Mr. Smith, an accountant, and later to Mr. Brown. In July, 1982, Mr. Thomas purchased two lots across from the model center of the Debtor. As a result of the discussion between Cypher, Thomas, Smith and Brown, EDC was formed in August, 1982.

It appears that Cypher applied for and ultimately obtained a contractor's license in the summer of 1982 and discussed with Thomas the possibility of becoming a participant in the EDC operation. EDC was in need of one with a contractor's license and offered Cypher a position with EDC who became an officer of EDC while he was still an employee of the Debtor. During the same time period he gave brochures of the Debtor, depicting the Horizon and the Gulfstream models, to Thomas.

In July EDC commenced constructing model centers across the street from the model centers of the Debtor. When confronted by the president of the Debtor concerning his involvement with EDC, Cypher denied any involvement just as he denied that he gave brochures of Hallmark to Thomas. There is no doubt that Cypher did promote the business of EDC while still employed by the Debtor. While there is some evidence in the record that Cypher told prospective buyers to look at the models of the Debtor and that EDC could build the same type of house for less money, there is no evidence in this record to establish any specific instance when a sale was actually taken away from the Debtor by EDC as the result of the activities by Cypher.

When the president of the Debtor became concerned about the activities of EDC and Cypher's possible involvement with EDC, he told Cypher that he could no longer continue to work for the Debtor unless he was willing to take a lie detector test. Cypher agreed to comply and also to sign a new employment contract but later changed his mind and walked off the job. At the time he left, his draw was in a negative position and he received $8,468.70 more in draw than he earned in commission.

Based on the foregoing, it is the Debtor's contention that it is entitled to a money judgment against Cypher for damages in the following areas and amounts:

(1) All of Cypher's draws from July, 1982 to October, 1982 because Cypher had spent most of his time planning to leave Hallmark (4,800.00).

(2) The amount that Cypher's draws exceeded his commissions by virtue of his employment agreement ($8,468.70); *See e.g.*, Annot., "Personal liability of servant or agent for advances or withdrawals in excess of commissions earned, bonus or shares of profits," 32 A.L.R.3d 802 (1970).

(3) The profits earned on approximately twenty of the houses built by EDC with a profit margin of approximately $8,500.00 to $9,000.00 per house ($180,000.00).

(4) Use of the Hallmark model center.

(5) Court costs under Chapter 57, Fla. Stat.

(6) Attorney's fees because there was no justiciable issues of fact or law, § 57.105, Fla.Stat.

It is clear and well established that neither an employee nor an agent of an employee or principal can enter into any competitive business and keep for the employee's own benefits any profits from the competing business. *Harris v. Gauthier*, 108 Fla. 390, 146 So. 562 (1933); *New World Fashions, Inc. v. Lieberman*, 429 So.2d 1276 (Fla. 1st DCA 1983); *Phillips Chem. Co. v. Morgan*, 440 So.2d 1292 (Fla. 3d DCA 1983); *U.S. v. Bowen*, 290 F.2d 40 (5th Cir.1961); *Bert Lane v. Int'l Ind., Inc.*, 84 So.2d 5 (Fla.1955); Agency and Employment Sections 70 at 225, 138 at 320–21. This is especially so where there is a written employment manual.

█ It is without dispute that Cypher was employed not as a salaried employee but as a salesman on draw against earned commissions. Thus, if his commission earned exceeded his draw, there is no

doubt he would have been entitled to receive the excess, therefore, the reverse is equally true and when his earned commission was less than the draw received at any given point in time, he was indebted to the Debtor to the extent of the shortfall. No doubt had he remained a loyal employee of the Debtor, this shortfall would have been, if not condoned, certainly not pressed as an obligation of a loyal employee who was required to meet the shortfall.

This, however, does not detract from the fact that the shortfall was and still is a debt owed. Thus, this Court is satisfied that Cypher is entitled to the Debtor in the amount of $8,468.70, the extent of the overdraw.

 Concerning the Debtor's claim against Cypher for the draws Cypher received during July, August, and September in the amount of $4,800.00, it is equally evident that the Debtor in entitled to recover this amount. The record is replete with evidence that during this time Cypher no longer served the Debtor but utilized his position to advance the interest of EDC almost exclusively. From the foregoing, one might conclude that the Debtor should prevail on the balance of its claims asserted in its Complaint. This is not the case, however, for the following reasons:

First, while there is some vague evidence in this record which would support the claim of an unfair competition by EDC with the Debtor, there is none to support this claim against Cypher. Cypher was never in the construction business himself and if there was anyone who unfairly competed with the Debtor, a proposition which is not altogether clear, it was EDC and not Cypher and, as noted earlier, the claim against EDC was dismissed.

Second, there is nothing at all in this record to support the claim of criminal conspiracy.

This leaves for consideration the claim based on tortious interference with a contractual relationship. While there is some evidence that Cypher did indeed interfere with the business of the Debtor by steering prospective customers away and toward EDC, the proof presented in support of the damages alleged sustained is woefully short of the degree of clarity and specificity which would warrant an award to the Debtor on this claim. The proof of the Debtor on this point never passed the realm of sheer speculation and there is simply no evidence in this record to establish how many homes EDC built by using the brochures and drawings of the Debtor depicting the Horizon and the Gulfstream models and, certainly, there is no evidence, as noted earlier, that Cypher himself built any homes by using the plans or brochures of the Debtor.

This being the case, the claim based on Count IV cannot be sustained and shall be dismissed.

A separate final judgment will be entered in accordance with the foregoing.